Connie D. KILFOYLE et al.

v.

Seymore G. HEYISON, Director of the Bureau of Traffic Safety and Jacob G. Kassab, Secretary of the Pennsylvania Department of Transportation.

Civ. A. No. 75–45 Erie.

United States District Court,
W. D. Pennsylvania.

June 29, 1976.

Charles Bierbach, Meadville, Pa., William Taggart, Erie, Pa., John Miller, Wilkes Barre, Pa., for plaintiffs.

James Marnen, Erie, Pa., John Heaton, Harrisburg, Pa., for defendants.

Before ALDISERT, Circuit Judge, and MARSH and KNOX, District Judges.

## OPINION

KNOX, District Judge.

This case is presently before a statutory three-judge court convened pursuant to 28 U.S.C. §§ 2281 and 2284. Once more we are required to consider the due process nuances of *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). References to the flexible concepts of due process of law contained therein as applied to varying situations appear in *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (suspension of a student in the public schools) and *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (termination of social security disability benefit payment).

The facts are relatively simple and are not in dispute the same having been agreed to in a stipulation accompanying the parties' joint motion for summary and declaratory judgment, filed January 15, 1976. From this it appears that the plaintiffs (both original and intervening plaintiffs) together with the class they purport to represent were all uninsured motor vehicle operators who were involved in motor vehicle accidents. Since it appeared that these operators were uninsured, the Pennsylvania Department of Transportation, Bureau of Traffic Safety instituted proceedings for suspension of their operators' licenses pursuant to the provisions of Section 1404 of the Pennsylvania Vehicle Code (Act April 29, 1959 P.L. 58 as last amended by Act of October 12, 1973 No. 82) 75 Purdon's PS 1404.[1]

This legislation it will be noted directs the department, upon receipt of notice of injury or death or damage to property of any one person in excess of $200 where the operator is uninsured, to suspend his license unless the party in question makes a deposit

1. "(a) If twenty (20) days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any one person in excess of two hundred dollars ($200.00), the secretary does not have on file evidence satisfactory to him that the person who would otherwise be required to file security under subsection (b) of this section has (1) been released from liability or (2) has been finally adjudicated not to be liable or (3) has executed a warrant for confession of judgment payable in such instalments as the parties have agreed to or (4) has executed a duly acknowledged written agreement providing for the payment of an agreed amount in instalments with respect to all claims for injuries or damages resulting from the accident, the secretary shall determine the amount of security which in his judgment shall be sufficient to satisfy any judgment or judgments that may be recovered against each operator or owner for damages resulting from such accident upon the basis of reports, information or other evidence submitted to or obtained by the secretary. In the event a person involved in an accident as described in this article fails to submit any information requested by the secretary indicating the extent of his injuries or the damage to his property, within fifty (50) days after the accident and the secretary does not have sufficient

evidence on which to base an evaluation of such injuries or damage, then the secretary, after reasonable notice to such person if it is possible to give such notice, otherwise without such notice, shall not require any deposit of security for the benefit or protection of such person.

"(b) The secretary shall within sixty (60) days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, and if such operator is a nonresident, the privilege of operating a motor vehicle within this State, and if such owner is a nonresident, the privilege of the use within this State of any motor vehicle owned by him, unless such operator or owner or both shall deposit security in the sum so determined by the secretary. Notice of such suspension shall be sent by the secretary to such operator and owner not less than ten (10) days prior to the effective date of such suspension and shall state the amount required as security. Where erroneous information is given the secretary with respect to the matters set forth in clause (1), (2) or (3) of subsection (c) of this section, he shall take appropriate action, as hereinbefore provided, within sixty (60) days after receipt by him of correct information with respect to such matters."

to secure payment of any judgment or judgments which may be rendered against him as a result of such accident. The amount of the deposit is fixed by the secretary. Under 75 Purdon's PS 1407 the operator's license together with vehicles registered in the name of the party involved remains suspended for a period of one year and is then returned unless an action for damages is then pending.

After various internal procedures, the department (defendant Heyison is Director of the Bureau of Traffic Safety in the Pennsylvania Department of Transportation (Penndot)) forwarded to the operators a letter known as Form TS 229 which is attached to the stipulation and marked Exhibit E notifying the operator in question of the proposed suspension of his license unless a deposit was made.

Pursuant to the instructions on the form the plaintiffs then requested departmental hearings on the matter.

It appears at this hearing before an examiner in some cases the plaintiff is not permitted to examine the file in the possession of the hearing examiner. In other cases plaintiffs were permitted to examine the file. The examiner after examining the plaintiff then may or may not hear adverse parties who need not be present. The examiner then reviews the accident reports and police reports and licensee's driving records in the file and prepares a report by use of a rubber stamp which states: "I believe there is a reasonable possibility of a judgment arising as a result of this accident." There is no rubber stamp for a contrary finding. At some of the hearings, plaintiffs are not permitted to be in the room if adverse parties or witnesses are present nor are they or their attorneys permitted to ask questions of other parties or witnesses and of course have no chance to cross examine other parties or witnesses or the police who do not appear but whose reports are considered by the examiner.

After filing of the report by the examiner, the plaintiffs were then notified that their licenses were to be suspended. Claiming a denial of due process of law and equal protection of the laws the original plaintiff Kilfoyle then filed suit in this court claiming that Section 1404, the basis for the suspension was unconstitutional. The suit asked for injunctive and declaratory relief under 42 U.S.C. §§ 1983 and 1985(3) and 28 U.S.C. §§ 2201 and 2202. Jurisdiction was averred to exist under 28 U.S.C. § 1343(3) and (4). A three-judge court was duly constituted on June 10, .1975, and thereafter following the usual pretrial procedures and filing of complete briefs by the parties the matter was argued on March 19, 1976.

At the argument before the three-judge court it became apparent that one of the problems concerning the procedures before the Bureau of Traffic Safety was that there were no rules and regulations governing the conduct of hearings by the examiners and if such regulations were adopted they might easily take care of the due process arguments made in this case. For this reason, the court entered a preliminary opinion dated April 12, 1976, in which no final decision was made but jurisdiction was retained to permit the Department Bureau of Traffic Safety "to promulgate specific regulations governing the administrative hearing procedure utilized by the Bureau in Section 1404 suspension cases." It was indicated in the partial opinion that 1404 on its face and as applied according to the stipulation appeared to be constitutionally defective. The court stated "we are confident that such regulations carefully and conscientiously drawn with due regard for constitutional requirements will solve the problems which form the basis of the complaint". It was stated that: "We will require in addition that the defendants promulgate regulations providing clear objective criteria to guide the Bureau's evaluation unit in deciding whether to initiate the motorist". The specific details required for such regulations were also set forth.

At the argument of the case counsel for the Commonwealth indicated that such regulations would be promulgated. However, on April 22, 1976, counsel directed to the members of the three-judge court a letter completely repudiating its position and ab-

solutely refusing to promulgate the regulations requested by the court. In this letter in response to the court's partial opinion of April 12, 1976, the Department indicated it proposed to stand on its position without promulgating any regulations and defied the court to enter a decree so that the Commonwealth could take an appeal. A copy of the letter received from the attorney for the Commonwealth is attached to this opinion and shows on its face the cavalier attitude of the Commonwealth with respect to this case.

In the light of the foregoing the court will therefore proceed to adjudicate the matter on the merits. Several questions are presented:

I. Should a class action be allowed?

II. Is the statute facially defective?

III. Are the procedures by which the statute is administered violative of due process?

IV. Does a stipulation entered into in a similar case in the Eastern District *Ortiz v. Kassab*, 70–478 (E.D.Pa. November 20, 1974) (not a class action) satisfy the requirements of due process?

V. What relief should be granted?

### I. *Class Action.*

■ In the partial opinion of April 12, 1976, the court stated that it had concluded that plaintiffs have satisfied the requirements for certification of a class. We have again reviewed the matter and find that the pre-requisites to a class action as set forth in Rule 23(a) are present. It appears the class is so numerous that joinder of all members as hereinafter described is impracticable. Ten persons have joined in intervening in this case seeking temporary restraining orders to protect their driving rights against claimed wrongful suspensions. From the statistics submitted in the stipulation it appears that there are thousands of others who have been subject to these proceedings throughout the state. It further appears that questions of law and fact common to the class exist in that they are all concerned with the constitutionality of the legislation in question and of the procedures pursued by the Bureau of Traffic Safety in carrying out the law. Typicality is present since it appears from the stipulation that all such persons have been treated similarly by the Bureau. It further appears that the representative parties will fully and adequately protect the interests of the class as has been demonstrated to the court by the zeal and ability shown by counsel by the plaintiffs in presenting the case.

The court further finds in addition to meeting the pre-requisites of subdivision (a) that a class action under 23(b)(2) is proper inasmuch as the defendants who oppose the class have acted or refused to act on grounds generally applicable to the class in that they have in general attempted to enforce this statute which will be demonstrated to be facially defective with procedures which do not accord with due process and from the forms submitted intend to pursue such course in the future. Therefore final injunctive relief or corresponding declaratory relief with respect to the class as a whole is proper.

We find that the test court route will not fit the circumstances of this case. Such test action has already been brought in *Ortiz v. Kassab,* infra. The procedures now being followed by the Bureau notwithstanding the warnings given in that case and the fact that the instant litigation has been pending since April 24, 1975, show that the same course of action which we hereby determine to be inadequate has been and is being pursued. The test action in *Ortiz v. Kassab* has not proved fruitful and therefore in order to protect the members of the class a full-fledged class action under Rule 23(b)(2) is determined to be necessary.

The description of the class to be certified is as follows:

"All Pennsylvania motor vehicle operators who received a letter from the Pennsylvania Bureau of Traffic Safety, known as Form TS 229, which initiated suspension proceedings under Section 1404 of the Pennsylvania Vehicle Code."

## II. *The Statute in Question is Facially Defective.*

The provisions of 75 PS 1404 heretofore set forth in full make no provision whatsoever for a hearing prior to suspension of an operator's license or operator's privileges. They merely provide for a determination by the secretary that a person is subject to the act and the secretary then determines the amount of security to be deposited and upon failure to do so, notice of suspension is sent out under 1404(b).

The statute in question is substantially the same as the Georgia statute considered by the United States Supreme Court in *Bell v. Burson,* supra. It is noted that this is a "fault" statute. It does not apply in case the operator has been released from liability or has been finally adjudicated not to be liable and under 75 PS 1407 the license is to be restored if during the period of a year no action for damages has been instituted or there has been a final adjudication of non-liability. In *Bell v. Burson,* supra, it was held that under such a statute there must be an inquiry into whether there is a reasonable possibility of an adverse judgment and the amount required for security. Such inquiry it was held need not take the form of full adjudication but suspension was proper only where there was a reasonable possibility that fault could be shown and a judgment entered. Therefore a state statute which does not provide for inquiry into fault under such circumstances is unconstitutional.

The facts disclosed in *Bell v. Burson* where a five-year old minor rode her bicycle into the side of a minister's automobile are typical of cases where if the statute is applied literally the license would be suspended notwithstanding that it would seem reasonably clear that the driver was not at fault, although of course as in other situations in the operation of motor vehicles other factors may indicate fault. In the Georgia case, we learned from the Supreme Court opinion that the only matters considered by the director in determining whether there should be a pre-judgment suspension was whether the petitioner was involved in the accident, whether he has complied with the provisions of the liability law or does he come with any of the exceptions provided by law.

The court recognized that, "If the statute barred the issuance to licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment", but the court then went on to say (402 U.S. p. 539, 91 S.Ct. at p. 1589):

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment."

In other words whether the license to operate a motor vehicle is considered a right or a privilege once it is issued some form of due process hearing is necessary before the same can be suspended or revoked. The court pointed out that the Georgia statute, as in the case of the Pennsylvania statute, was not a no-fault scheme. The court held that in such a situation the state must provide a forum for the determination of the question "whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident. We deem it inappropriate in this case to do more than lay down this requirement." (402 U.S. p. 542, 91 S.Ct. at p. 1591.) As noted, the court specifically stated that it was not dealing with a no-fault scheme of state regulation. (As to Pennsylvania's present no-fault statute the same will be discussed hereafter.) The court also stated that equal protection had not been raised in the case, (see Footnote No. 4, page 541, 91 S.Ct. 1586, 1590) and that procedures adequate to determine a welfare claim may not suffice to try a felony charge. The court then went on to say:

"Clearly, however, the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liabili-

ty. That adjudication can only be made in litigation between the parties involved in the accident. Since the only purpose of the provisions before us is to obtain security from which to pay any judgments against the licensee resulting from the accident, we hold that procedural *due process will be satisfied by an inquiry limited to the determination whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee.*"

In the preliminary opinion of April 12, 1976, we stated:

"On its face, Section 1404, however, provides no hearing prior to suspension of privileges. Section 1401, however, provides that any person aggrieved by action under Sections 1403 and 1411 may petition in the court of common pleas for a trial *de novo.* Section 1401 does not provide for a stay of the suspension proceedings pending determination of the petition but the Bureau of Traffic Safety has stipulated to the availability of such a stay. On November 20, 1974, in the case of *Ortiz v. Kassab,* Civ. No. 70–478 (E.D. Pa.) (unreported), the Bureau stipulated to the following: (1) the effective date of all suspensions issued under Section 1404 would be no less than 35 days after the date of mailing of notice to the licensee; (2) each suspension notice would be conspicuously marked to the effect that the licensee has the right to appeal the suspension pursuant to Section 1401 within 30 days of receipt of the notice; and (3) if the licensee files a timely appeal, and notifies the Bureau of the appeal, the appeal shall act as a supersedeas and the Bureau will not suspend the license until final disposition of the appeal. (Parties' Stipulation ¶ 17).

"Defendants argue that *Bell v. Burson* is satisfied by the combination of the availability of a *de novo* judicial proceeding and the Bureau's stipulation concerning the supersedeas effect of a timely appeal. This argument proves too much. The brute fact is that suspensions under Section 1404 are determined administratively: of *approximately 56,000 Section*

*1404* proceedings in an eight month period, 179 persons petitioned for trial *de novo* in court. (Parties' stipulation ¶¶ 4, 19). We have no indication that defendants intend to dismantle the administrative machinery for handling Section 1404 suspensions. Nor do we have any empirical data on the effect that such a dismantling would have on the caseloads in the state courts. Under these circumstances, we see no reason why the administrative procedure, utilized in the vast majority of cases, ought to be immunized from constitutional inquiry."

With respect to plaintiff's claims of unconstitutional interference with travel and denial of equal protection of the laws in these procedures, we determine that the same are foreclosed by the action of the Supreme Court in affirming *Young v. Cobb* on January 13, 1975, 419 U.S. 1098, 95 S.Ct. 768, 42 L.Ed.2d 795. In this case the decision of a three-judge court in the Southern District of Florida was upheld. *Young v. Cobb,* Case No. 72–2064 Civ. JE (S.D.Fla. 1974). Such determination is binding upon us. *McCarthy v. Phila Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (March 22, 1976).

III. *Deficiencies In The Present Pennsylvania Procedures.*

There is no doubt that *Bell v. Burson,* supra, does not demand the full panoply of a due process adversary hearing such as is required for entry of a formal judgment in court or a conviction in a criminal case and it is clearly held that procedural due process will be satisfied by an inquiry limited to the determination "whether there is a reasonable possibility of judgments in the amounts claimed being rendered against the licensee". We thus have the flexible nature of due process as has been further elucidated in *Goss v. Lopez,* supra, and *Mathews v. Eldridge,* supra.

It is true, however, that since some sort of hearing is required to determine the reasonable possibility of judgments being entered against the licensee, it is required that such hearing not be a perfunctory one

going through the forms of a charade in order to give lip service to the requirements of *Bell v. Burson*, supra. *Bell v. Burson* does state (402 U.S. page 541, 91 S.Ct. page 1590):

> "But '[i]n reviewing state action in this area * * * we look to substance, not to bare form, to determine whether constitutional minimums have been honored.' *Willner v. Committee on Character*, 373 U.S. 96, 106–107, 83 S.Ct. 1175, 1182, 10 L.Ed.2d. 224 (1963) (concurring opinion)".

In *Goldberg v. Kelly*, 397 U.S. 254 at 269, 90 S.Ct. 1011 at 1021, 25 L.Ed.2d 287 (1970) it was stated: "[W]here credibility and veracity are at issue, as they must be in many termination proceedings written submissions are wholly unsatisfactory basis for decision."

It is true that in *Ortiz v. Kassab*, supra, (not a class action) in the Eastern District, the Commonwealth did stipulate to certain provisions to be followed prior to suspensions under Section 1404. *Ortiz* will be discussed more fully hereafter. The difficulty is that the procedures as now followed by the Bureau indicate as stated at Transcript 54 that the only result is an attempt to make some perfunctory compliance with *Bell v. Burson*. There is no preliminary screening to determine whether fault appears on the face of the reports received from the police and the other parties in the accident. The Commonwealth admits (Transcript 53 of argument) that there should be prescreening and that this might prevent situations from going to hearing where the freedom of the operator from fault was obvious from examining the papers submitted by the adverse party. It would appear that what occurred in *Bell v. Burson*, where a child rode into the side of the operator's car, could occur here in Pennsylvania under present procedures.

The inadequacy of the Pennsylvania procedures to provide the most elementary due process are shown in the stipulation filed as attached to the motion for summary and declaratory judgment. It appears that of those requesting hearings ninety percent are ultimately suspended, (Stipulation ¶ 7)

although it would seem obvious that in ninety percent of the accident cases, the reasonable possibility of judgment in favor of the other driver would not be this high considering the Pennsylvania standards of fault in a motor vehicle collision. It also appears that 1.6 percent of the total are successful at the hearing for a variety of reasons including matters other than the reasonable possibility of a judgment (Stipulation ¶ 8(e)). Paragraph 13 shows the experiences as to the procedures being applied at the administrative hearing which the Commonwealth did afford under Section 1404 following *Bell v. Burson*. The opposing parties are usually not present. Some operators are permitted to examine the file containing the evidence against them upon which the examiners act. Others are not. This file contains the other party's accident reports and police investigation reports. After the close of the hearing, the examiner prepares a written report with his recommendation but the operator is not allowed to see the same. At some hearings plaintiffs are not permitted to be in the room when adverse parties or their witnesses testify in the presence of the examiner. Neither plaintiffs nor their attorneys are permitted to ask questions of or in any way cross examine other parties or witnesses attending the hearing if they are there. In Stipulation 13(1) it is stated:

> "The hearing examiner is provided with a rubber stamp that states: 'I believe there is reasonable possibility of a judgment arising as a result of this accident'."

It should be noted that it does not say there is a reasonable possibility of judgment against whom. In 13(m) it is agreed that "the hearing examiners do not have a rubber stamp which states the contrary".

The deficiencies in these procedures are obviously the result of the absence of regulations, guidelines or policy directives for the hearing examiners to follow in conducting these hearings. Despite the warnings of *Ortiz* and this case the Department has not seen fit to prepare such regulations (Tr. 57) and as a matter of fact has adamantly refused to promulgate the same. See letter attached to this opinion, (Appendix A) as

compared to statements made by the defendants' attorney during argument of this case. (Appendix B).

■ We therefore hold that the procedures now being followed by the Bureau of Traffic Safety are perfunctory only in an attempt to give some appearance of compliance with *Bell v. Burson,* supra, and do not in substance provide the constitutional minimums of due process.

### IV. Does a De Novo Court Hearing Save The Statute?

In Section 1401 (75 PS 1401(b)) provision is made for appeal by petition to the court of common pleas in which the operator resides, wherein there shall be a "trial de novo to determine whether such order or act is lawful and reasonable." It is further provided that the filing of such petition shall not operate to suspend the order or act of the secretary unless a stay thereof shall be allowed by the court pending final determination. While the granting of a supersedeas is discretionary with the court, it does appear that the court usually does grant a supersedeas and in any event the stipulation in *Ortiz v. Kassab,* supra, provided that in any case where an appeal had been taken the Bureau would not suspend the license until final disposition of the appeal by the common pleas court.

■ It is not clear whether the court of common pleas on appeal must determine the question of fault and the reasonable possibility of judgment against the operator or whether the court is only to determine whether the necessary basis for suspension under 1404 as set forth in the statute exists or whether any of the exceptions therein set forth are operating. It is noted in *Bell v. Burson* that on appeal to the Georgia Superior Court the question of fault was examined in detail but the Georgia court of appeals reversed the superior court for examining this question. The Pennsylvania Supreme Court in 1939 in *Commonwealth v. Cronin,* 336 Pa. 469, 9 A.2d 408 criticized severely the refusal to allow cross examination of witnesses at an administrative hearing. The court said:

"While it may be permissible by law, especially in view of the right of the licensee to appeal to the court of common pleas, it does not, in our opinion, conform to the rudimentary requirements of fair play, and afford an open and impartial hearing. If the licensees are given full opportunity to present their defense before the hearing inspectors, and to cross-examine their accusers asserting charges against them, many unnecessary appeals to the court from the action of the Secretary will be avoided."

The court held however that any constitutional violations which occurred during the course of the administrative hearing were cured by the appeal and de novo hearing in the court of common pleas. See also *Commonwealth v. Funk,* 323 Pa. 390, 186 A. 65 (1936). That the uneasiness expressed by the Pennsylvania Supreme Court in *Cronin* in 1939 was well justified is shown by the fact that during the ensuing years the Department of Revenue (whose powers are now exercised by Penndot) apparently did nothing to rectify the procedures subjected to criticism in *Cronin.* The record in this case together with the holdings of the United States Supreme Court in recent years shows that an appeal to the common pleas court with a de novo trial is not a satisfactory method of according operators due process of law.

As previously stated in the preliminary opinion in this case: "The brute fact is that suspensions under Section 1404 are determined administratively: of approximately 56,000 Section 1404 proceedings in an eight month period, 179 persons petitioned for trial *de novo* in court. (Parties Stipulation ¶¶ 4, 19)." We have no indication that defendants intend to dismantle the administrative machinery for handling Section 1404 suspensions. In paragraph 20 of the stipulation it was agreed that 1.5 percent of the total of license suspensions were appealed to the common pleas court for de novo hearings.

It was admitted during the argument of this case that the filing fees for filing a de novo appeal are $20.50 which is not re-

turned and it was of course admitted that the petitioner must get counsel to file the appeal and proceed with the hearing or else proceed pro se. In *Bell v. Burson*, supra, at 402 U.S. 542 and 543, 91 S.Ct. 1586, it was held that a state must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident. We hold that at the present time Pennsylvania does not do so. The Supreme Court further described various alternative methods of compliance that might be adopted including complete abandonment of the state's present scheme and transferring all such proceedings to a de novo hearing in the court of record. As this court stated at the argument we are not informed as to what impact of the transfer of all these 56,000 license suspensions to the common pleas court for determination would have upon the state judiciary.

For our present purposes it is sufficient to say that Pennsylvania at the present time has adopted no statute or rules and regulations to comply with *Bell v. Burson*. It relies almost entirely upon administrative procedures which are inadequate and the right of trial de novo when as a practical matter, most of these decisions are made at the administrative level. This is not a satisfactory procedure for affording due process.

## V. *The Ortiz v. Kassab Stipulation*

*Ortiz v. Kassab*, No. 70–478 in the Eastern District of Pennsylvania was commenced in 1970 when plaintiff had been notified to post security or to obtain release from liability arising out of an accident. He did neither and suffered a suspension. He denied that he was at fault in the accident. He filed a complaint in the district court for the Eastern District asking to enjoin enforcement of Section 1404 and for the convening of a three-judge court. Judge Wood relying upon *Ex parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), upholding the right of a state to install a compulsory insurance or bond program as a condition of registration refused to convene a three-judge court and dismissed the action for want of a substantial federal question. *Ortiz v. Depuy*, 313 F.Supp. 156 (E.D.Pa.1970). Plaintiff then appealed to the Third Circuit, *Ortiz v. Depuy*, 444 F.2d 429 (3 Cir. 1971), whose decision was entered June 21, 1971, following the decision on May 24, 1971, in *Bell v. Burson*. The circuit after noting that the Pennsylvania Act was almost identical with Georgia law stated:

> "The appellees already have started to implement their administrative procedures in compliance with the *Bell v. Burson* decision. All suspensions presently in effect under Section 1404 are being rescinded as soon as reasonably possible and registrations so suspended restored." The order of the lower court was therefore vacated and the case remanded to the district court for further proceedings by the Pennsylvania administrative agency as to both appellants in compliance with the *Bell v. Burson* judgment with the United States Supreme Court."

It appears that upon remand the case was reassigned to the Honorable Clifford Scott Green and after a previous stipulation, a final stipulation was entered into which was approved by the court on November 20, 1974.[2] The *Ortiz* stipulation is embodied in the stipulation filed in this court accompanying the motion for summary and declaratory judgment. (Exhibit F ¶ 17).

2. "Counsel for the parties hereby agree and stipulate that the court add the following amendments to the Order of February 22, 1972, on the above captioned case,

1. The defendants, their agents and successors in office hereby insure that the effective date of all suspensions issued under Section 1404 of the Pennsylvania Vehicle Code shall be not less than thirty-five (35) days after the date of mailing of such notice to the licensee.

2. Each such suspension notice shall be conspicuously marked to the effect that the licensee has the right to appeal the suspension within thirty (30) days of the date of receipt of said notice pursuant to the provisions of Section 1401 of the Vehicle Code; 75 PS 1401.

3. In any case where the licensee files a timely appeal to court and notifies the department of the appeal, the appeal shall act as a supersedeas and the department shall not suspend the license until final disposition of the

It will be noted that paragraph 17 of the stipulation admits that Ortiz is not a class action and as a matter of fact none of the proceedings since remand from the circuit have been reported. It thus appears evident that no one has any standing to enforce the stipulation in *Ortiz v. Kassab* other than the original parties. In any event, the record in this case shows that the Bureau of Traffic Safety at times may not comply with that stipulation which actually does not reach the heart of the matter as to whether there is sufficient substantial adherence to the requirements of due process in the administrative procedure or whether the department is really engaging in perfunctory formal compliance with *Ortiz.*

Of course, ordinarily a court will accept representations made by counsel for a state or state institution at bar as parameters for a decision. See *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

Experience has shown however that the state in many cases does not comply with the *Ortiz* stipulation. There is no method of enforcing the same by other persons and in any event it does not reach the heart of the problem as shown by the in depth study made in this case. The stipulation (¶ 18) shows this non-compliance inasmuch as it is agreed that only one of the plaintiffs an intervenor Liggett received a suspension notice notifying her of her right to appeal the suspension, despite paragraph 2 of the *Ortiz* stipulation that each suspension notice shall be conspicuously marked as to the right of the appeal. In other words, licensees subject to suspension have already pursued the test case route and it has proved to be futile.

## VI. *Relief To Be Granted.*

The court has been concerned with the question of mootness in this case. The problem is whether the enactment of the Pennsylvania No-Fault Motor Vehicle Insurance Act of July 19, 1974, No. 176 (40 PS 1009.101, et seq., effective July 19, 1975) while this litigation was pending does not wipe out any need for Section 1404 and hence the questions raised in this case are moot.

This matter was discussed with counsel at Transcript page 61, et seq., where counsel pointed out that the No Fault Act did not apply to property damage, although insurance is required; it does not apply to pedestrians who are not required to have insurance; and it does not apply to pain and suffering as to claims beyond the threshold of $1,000. Regardless of licensing provisions it is probable that some persons will proceed to drive without operator's licenses or without proper registrations. The No Fault Act does provide, Section 601, that such persons are guilty of a misdemeanor and we take judicial notice that a number of such prosecutions have already come before the common pleas courts of Pennsylvania. We also note that under Section 501 of the Pennsylvania No Fault Act a person required to make payments for bodily injury under the Act to a person occupying a motor vehicle the owner of which is uninsured may recover all benefits paid and costs from the owner or registrant of such motor vehicle and it is further provided:

> "The failure of the person to make payment within thirty days shall be grounds for suspension or revocation of his motor vehicle registration and operator's license."

In a host of cases the latest of which is *DeFunis v. Odegaard*, supra, the United States Supreme Court has held that a federal court is without power to decide questions that cannot affect the rights of litigants in the case before them and that lack of mootness must exist at all stages of litigation.

In the instant case, however, mootness certainly does not affect the

---

appeal by common pleas court. Any question as to the timeliness of an appeal shall be settled by the common pleas court upon motion to quash made by the department.

4. This stipulation shall remain under the continuing jurisdiction of the court, who will be consulted on any disputed matter arising under this Amendment or the original order."

rights of the plaintiffs before this court or the class whom they represent. Pennsylvania has not seen fit to repeal 1404 and it was stated at bar that it is regarded as a useful tool by the state. In view of the exceptions in the Pennsylvania No Fault Statute and the fact that the situation of the parties now before the court is not affected by it we hold that this case is not moot. We further hold that since there is no litigation pending before the Pennsylvania courts with respect to the matters involved in this case which is a civil rights case and does not require exhaustion of state remedies (See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)) and the fact that the test case route followed in *Ortiz v. Kassab*, supra, has not proved effective this is not a proper case for abstention by the federal courts. We there-fore hold that plaintiff is entitled to declaratory judgment as to the invalidity of Section 1404 and the Pennsylvania procedures based thereon, that plaintiffs are also entitled to an injunction restraining enforcement of Section 1404 until further order of the court. The motion to dismiss filed by the defendants on May 16, 1975, on the grounds that the complaint does not state a cause of action and that this is a case for abstention will be denied.

The court is not disposed to allow counsel fees and costs to the plaintiffs who are represented by Legal Service Organizations.

Counsel for plaintiffs are directed to prepare a final order in this case and present the same to the court for consideration with notice to opposing counsel within ten days from the date of this opinion.

APPENDIX "A"

## SILIN, ECKERT, BURKE, SIEGEL & ROSEMAN

Attorneys and Counsellors at Law   TELEPHONE (814) 452–4473

255 WEST TENTH STREET
ERIE, PENNSYLVANIA 10501

WILLIAM H. ECKERT
WILLIAM H. BURKE
MARK A. ROSEMAN
THEODORE B. ELY
STEPHEN A. TETUAN
JAMES T. MARNEN                 April 22, 1976          BERNARD L. SIEGEL (OF COUNSEL)
BRUCE W. BERNARD                                        ISSAC J. SILIN (1902–1964)

Honorable Ruggero J. Aldisert
New Federal Building
1000 Liberty Avenue
Pittsburgh, Pennsylvania   15219

Honorable William W. Knox
605 United States Court House
    and Post Office
Pittsburgh, Pennsylvania   15219

Honorable Rabe F. Marsh
8th Floor, United States
    Court House and Post Office
Pittsburgh, Pennsylvania   15219

Re: Kilfoyle vs. Heyison
Civil Action No. 75–45 Erie

Dear Judges Aldisert, Knox and Marsh:

After carefully reviewing the Opinion of the Court in the above-captioned case under date of April 12, 1976, it continues to be the position of the Pennsylvania Department of Transportation that administrative treatment

of license suspensions under 75 P.S. 1401 in the nature of hearings is unnecessary. The Department, after careful consideration of this matter, feels that it is not in a position to promulgate regulations governing such hearing procedures and, in fact, is contemplating the abandonment of such hearings. It continues to be our position that Section 1401, coupled with Stipulation in *Ortiz v. Kassab*, Civil Action No. 70–478 (E.D.Pa.1970), are adequate to afford the procedural safeguards mandated by *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

Moreover, the Department, like plaintiffs' counsel, is somewhat uncertain as to the wording of the Decree contemplated by the Court. We would respectfully request, along with the plaintiffs, some clarification in this regard.

Also, the Department has felt it appropriate to bring our thoughts aforementioned in the first two paragraphs of this letter to the Court's attention for their consideration, so that the Court might be afforded some insight into our position and might perhaps consider the entirety of this case at this time. Quite frankly, is is our intention to appeal the Decree, when issued, which would follow from the Opinion of Your Honorable Court. It is, therefore, our feeling that perhaps it might be appropriate for the Court, under the circumstances, to issue, at this time, a more extensive Decree than now contemplated.

Your kind consideration in this matter will be greatly appreciated.

> Very truly yours,
>
> (s) James T. Marnen
> James T. Marnen,
> Assistant Attorney General

JTM/mas

cc: John L. Heaton, Assistant Attorney General
    Charles A. Bierbach, Esquire

### APPENDIX "B"

JUDGE MARSH: Well, like the preacher in Georgia, he's on the road and some girl on a bicycle ran into him. He shouldn't have his license suspended, should he?

MR. MARNEN: You mean a preacher, Your Honor?

JUDGE MARSH: I mean he was a preacher.

MR. MARNEN: There should be pre-screening, Your Honor. I don't know if there is, in fact.

It seems to me that's why we get here. If the Commonwealth attorneys had taken a good look at this whole problem they probably would come up with some reasonable rules and regulations to take care of these things that we are hearing today, but they haven't.

MR. MARNEN: I am in hearty agreement with Your Honor. I think there should be regulations to guide these people, but again I am going to fall back on Bell versus Burson that the hearing at the forum level is enough. It sort of moots out the rest of my argument on the court, the appellate court issue.

JUDGE ALDISERT: You have made some suggestions that perhaps in the administrative hearings there may be some guidelines.

What would you suggest these guidelines to be for PennDot?

MR. MARNEN: Are you alluding to procedure?

JUDGE ALDISERT: Yes, sir. I'm alluding to what you suggested, that perhaps there should be guidelines. And I was just wondering what you had in mind, what the guidelines ought to be.

MR. MARNEN: I think they ought to define reasonable possibility of the judgment for the hearing officers. I think they ought to define exactly how the hearing is going to take place. I don't know that I would require subpoena power or transcripts, or things of that nature. If I were promulgating those regulations, I would suggest the right of cross-examination be allowed; although, I think it might just be a little gravy, so to speak. I think that the procedure and the substantive law, perhaps to a certain or lesser extent, ought to be laid out in detail by the policy makers of the Department of Transportation.

JUDGE KNOX: I think there ought to be a screening, a preliminary screening before the notice goes out, too.

MR. MARNEN: I would agree with that, too, Your Honor. But again I think this has absolutely no effect on 1404. We're talking about a statute here, not regulations or administrative activity. Thank you.