Kathleen L. **PIERCY**, Appellant,

v.

**Seymore G. HEYISON, Individually and as Director of the Bureau of Traffic Safety for the Pennsylvania Department of Transportation, and James B. Wilson, Individually and as Secretary of the Pennsylvania Department of Transportation.**

No. 76–2635.

United States Court of Appeals,
Third Circuit.

Argued Sept. 6, 1977.

Decided Nov. 4, 1977.

---

5. The only reasons for relieving a party from a final judgment are set forth in Fed.R.Civ.P. 60(b).

Charles A. Bierbach, Philadelphia, Pa., for appellant.

John L. Heaton, Asst. Atty. Gen., Com. of Pennsylvania, Dept. of Transportation, Harrisburg, Pa., for appellees.

Before SEITZ, Chief Judge, and GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In this appeal from an order granting summary judgment to the defendants, we consider, hopefully for the last time, the powers of a single district judge to pass upon a constitutional challenge to a state statute without convening a three-judge district court. Appellant contends that section 1413 of the Pennsylvania Vehicle Code, Pa.Stat.Ann. tit. 75, § 1413 (Purdon),[1] vio-

---

1. Pa.Stat.Ann. tit. 75, § 1413 provided:

(a) The secretary, upon receipt of a certified copy of a judgment, shall forthwith suspend the license and registration of any resident operator or owner and any nonresident's operating privilege of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section and in section 1416.

(b) If the judgment creditor consents in writing, in such form as the secretary may prescribe, that the judgment debtor be allowed license and registration or nonresident's operating privilege, the same may be allowed by the secretary, in his discretion, for six (6) months from the date of such consent, and thereafter until such consent is revoked in writing, notwithstanding default in the payment of such judgment, or of any instalments thereof prescribed in section 1416, provided the judgment debtor furnishes proof of financial responsibility.

(c) Any person whose license, registration or nonresident's operating privilege has been suspended, or is about to be suspended, or shall become subject to suspension under the provisions of this article, may be relieved from the effect of such judgment as hereinbefore prescribed in this article, if such person can present to or file with the secretary proper evidence that a bond or insurance policy as provided for in this article was in force and effect at the time of the accident resulting in the judgment, and is or should be available for the satisfaction of the judgment to the extent provided for in this article; however, if the bond or insurance policy is not available because the insurance company or surety company has gone into receivership or bankruptcy, such person shall only be required to present to or file with the secretary proper evidence that a bond or insurance policy was in force and effect at the time of the accident.

lates procedural due process by authorizing the suspension of her driver's license without affording her a hearing. In the District Court below, a single judge held that appellant's constitutional argument was clearly foreclosed by prior decisions of the United States Supreme Court and thus was so insubstantial as not to require the convening of a three-judge district court pursuant to 28 U.S.C. § 2281. That section of the Judicial Code has now been repealed by the Act of August 12, 1976, Pub.L. No. 94–381, § 1, 90 Stat. 1119. But since the instant suit was commenced in April of 1976, prior to the effective date of Pub.L. No. 94–381, the old section 2281 still controls.[2] We conclude that the District Court erred in holding that appellant's constitutional challenge to the Pennsylvania statute is foreclosed by previous Supreme Court decisions and, consequently, we reverse the single judge order granting summary judgment to the defendants.

The appellant is Kathleen L. Piercy. In November, 1973, her husband, while driving their jointly owned automobile, was involved in an automobile accident. Mrs. Piercy alleges that she was not present in the car at the time of the accident and that she was not exercising any authority or control over her husband's operation of the vehicle. The Piercys apparently were not insured. Subsequent to the accident, Mrs. Piercy and her husband signed a $228.54 note payable in weekly installments of $25 to the Aetna Casualty and Surety Company (Aetna) in satisfaction of a subrogation claim. The note contained a cognovit clause providing for confession of judgment if Mrs. Piercy and her husband defaulted on any of the installments. The note contained no admission of liability on Mrs. Piercy's part but merely recited:

> This note is given for the auto accident on 11/6/74 at Route 197 near Meadville, Pa.

Mrs. Piercy alleges that she signed the note because Aetna threatened her with a license suspension pursuant to section 1404 of the Pennsylvania Vehicle Code, Pa.Stat.Ann. tit. 75, § 1404 (Purdon).[3] When she and her husband defaulted on their installment payments, Aetna confessed judgment against both of them in the Court of Common Pleas of Allegheny County. The Piercys reside in Crawford County, and they did not receive notice either of the proceedings in Alleghe-

This statutory provision now appears in Pennsylvania's official statutory compilation as 75 Pa.Cons.Stat. § 1742(a). Because this case was commenced prior to the new codification scheme, our opinion will refer to this statutory provision as section 1413. However, the reasoning employed in the opinion is equally applicable to section 1742(a).

2. Section 7 of Pub.L. No. 94–381 provides that "[t]his Act shall not apply to any action commenced on or before the date of enactment."

3. Pa.Stat.Ann. tit. 75, § 1404 provided in relevant part:

(a) If twenty (20) days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any one person in excess of one hundred dollars ($100.00), the secretary does not have on file evidence satisfactory to him that the person who would otherwise be required to file security under subsection (b) of this section has (1) been released from liability or (2) has been finally adjudicated not to be liable or (3) has executed a warrant for confession of judgment payable in such instalments as the parties have agreed to or (4) has executed a

duly acknowledged written agreement providing for the payment of an agreed amount in instalments with respect to all claims for injuries or damages resulting from the accident, the secretary shall determine the amount of security which in his judgment shall be sufficient to satisfy any judgment or judgments that may be recovered against each operator or owner for damages resulting from such accident upon the basis of reports, information or other evidence submitted to or obtained by the secretary. . .

(b) The secretary shall within sixty (60) days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident . . . .

This section was held to be unconstitutional in *Kilfoyle v. Heyison*, 417 F.Supp. 239 (W.D.Pa. 1976) (three-judge court). It was repealed by Act of June 17, 1976, Pub.L. 162, No. 81, § 7, 1976 Pa.Legis.Serv. at pp. 287–88 (effective July 1, 1977). Mrs. Piercy contends that section 1404 was being enforced as of February 6, 1975, when she signed the cognovit note.

ny County or of the fact that a judgment had been confessed against them. After the judgment had remained unsatisfied for 60 days, the Prothonotary of Allegheny County forwarded a certified copy of it to the defendants, who are officials within the Pennsylvania Department of Transportation. Acting pursuant to section 1413(a) of the Pennsylvania Vehicle Code, the defendants notified Mrs. Piercy of the summary suspension of her motor vehicle operator's license and vehicle registration until she should satisfy the judgment. Mrs. Piercy promptly filed a class action suit on her own behalf and as a representative of all persons being subjected to section 1413(a) driver's license suspensions predicated upon judgments obtained by confession.

The District Court declined to convene a three-judge court to consider the constitutionality of the application of section 1413(a) to Mrs. Piercy. The district judge recognized that under the standard articulated in *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973), he should convene a three-judge court unless the unsoundness of the plaintiff's claim "so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for inference that the questions sought to be raised can be the subject of controversy." In order to understand the District Court's holding, we must first explore the nature of Mrs. Piercy's challenge to the Pennsylvania statute.

In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the plaintiff challenged Georgia's Motor Vehicle Safety Responsibility Act, which provided that the driver's license of an uninsured motorist involved in an accident would be suspended unless that motorist could post security for the amount of damages claimed by a party to the accident. The pre-suspension procedures under the Georgia statute excluded any consideration of fault or responsibility for the accident. The Court observed that once driver's licenses are issued, their continued possession might be essential in the pursuit of a livelihood. 402 U.S. at 539, 91 S.Ct. 1586. Consequently, the Court held that licenses could not be taken away with-

out some procedural safeguards required by the due process clause of the fourteenth amendment. The Court stated:

> We hold, then, that under Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident.

402 U.S. at 542, 91 S.Ct. at 1591.

Relying on *Bell v. Burson*, a three-judge district court in *Kilfoyle v. Heyison*, 417 F.Supp. 239 (W.D.Pa.1976), struck down section 1404 of the Pennsylvania Vehicle Code. Section 1404 authorized the suspension of driver's licenses of persons involved in automobile accidents unless those persons made deposits to secure the payment of any judgments which might be rendered against them due to the accidents. The three-judge district court held this section unconstitutional as a denial of procedural due process since it did not provide for an effective pre-termination inquiry into the question of fault or liability. The court rejected the state's argument that due process was satisfied by the availability of de novo judicial review of the termination. The court noted that of the approximately 56,000 suspension proceedings under the statute in an eight-month period, only 179 were followed by petitions for de novo review. The court assumed that many of the remaining individuals were deterred from exercising their right of de novo review by the need for paying a filing fee and for obtaining counsel. 417 F.Supp. at 247.

The District Court in this case distinguished the *Kilfoyle v. Heyison* holding that section 1404 was unconstitutional on the ground that section 1404 dealt with prejudgment suspensions, while section 1413, the statute challenged here, dealt with post-judgment suspensions. The District Court reasoned that the due process defect in *Bell v. Burson* was the absence of a pre-termination determination of the like-

lihood of liability. Here post-judgment terminations were supported by reliable determinations of such liability in the judgments themselves.[4]

That reasoning, however, misses the thrust of Mrs. Piercy's claim. She contends that a judgment by confession on a cognovit note obtained under the coercion of the unconstitutional section 1404 does not afford the indicia of reliability required by *Bell v. Burson.* That contention compels us to examine the Supreme Court case law on the reliability of judgments resulting from cognovit notes. The governing cases are *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), and *Swarb v. Lennox,* 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972).

In *Overmyer,* a corporate affiliate of D. H. Overmyer Co., Inc., contracted with the respondent Frick Co. for the manufacture and installation by Frick of an automatic refrigeration system in a warehouse under construction. When Overmyer defaulted on its payments, Frick stopped the work in progress. After Overmyer had made a partial cash payment and had issued an installment note for the balance, Frick completed the work, which Overmyer accepted as satisfactory. However, Overmyer again requested additional time to make the installment payments. After extensive negotiations between counsel of both corporations, Frick agreed to release three mechanic's liens, to reduce the monthly payment amounts and interest rate, and to extend the time for final payment. In exchange for these concessions, Overmyer consented in advance to Frick's obtaining a judgment without notice or hearing if Overmyer defaulted on its subsequent payments. After Overmyer stopped its payments, Frick caused judgment to be entered on the note pursuant to the cognovit clause. The Supreme Court upheld the cognovit note judgment against Overmyer's due process challenge, holding that under the circumstances Overmyer had voluntarily, knowingly, and intelligently waived its right to notice and to a hearing. 405 U.S. at 184–87, 92 S.Ct. 775. In reaching this conclusion, the Court emphasized: (1) that counsel for both sides had negotiated for the cognovit note, *id.* at 183, 92 S.Ct. 775; (2) that Overmyer was a corporation and thus there was no bargaining disparity, *id.* at 186, 92 S.Ct. 775; and (3) that Overmyer had secured benefits, such as the release of Frick's mechanic's liens, the reduction in payments, and extension of time, in exchange for the note, *id.* at 186–87, 92 S.Ct. 775. Although the Supreme Court upheld the cognovit note judgment under these circumstances, Justice Blackmun's opinion for the Court carefully limited the holding:

> 2. Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the cognovit provision, other legal consequences may ensue.

405 U.S. at 188, 92 S.Ct. at 783.

In *Swarb v. Lennox, supra,* a companion case to *Overmyer,* the Supreme Court dealt with the Pennsylvania cognovit note practice. The Court held that the particular appeal was governed by *Overmyer.* Nevertheless, the majority opinion again carefully restricted the reach of the decision.

4. The District Court accepted the reasoning of the Pennsylvania Commonwealth Court in *Department of Transportation v. Rodgers,* 20 Pa. Cmwlth. 393, 341 A.2d 917 (1975), overruling *Commonwealth v. Roeting,* 7 Pa.Cmwlth. 317, 300 A.2d 125 (1973). In *Roeting,* the Pennsylvania Commonwealth Court had held: (1) that a driver's license could not be suspended without sufficient evidence to determine that the judgment was the result of the judgment debtor's *negligent* driving and (2) that the judgment itself did not constitute such evidence. In *Rodgers,* however, that same court concluded that the purpose of section 1413 was to insure payment to judgment creditors from those who had been adjudged liable in car accidents. The court noted that *Bell v. Burson* did not require a hearing to determine negligence, but only to determine the possibility of a judgment arising out of the accident. The court reasoned that since section 1413 was triggered only after the claim had been reduced to judgment, the only due process requirement is a determination that the person whose license is being suspended is the same person against whom the judgment was entered. 341 A.2d at 921.

The decision in *Overmyer* and the disposition of the present appeal prompt the following observations:

1. In our second concluding comment in *Overmyer, supra,* at 188 [92 S.Ct. 775, at 783], we state that the decision is "not controlling precedent for other facts of other cases," and we refer to contracts of adhesion, to bargaining power disparity, and to the absence of anything received in return for a cognovit provision. When factors of this kind are present, we indicate, "other legal consequences may ensue." That caveat has possible pertinency for participants in the Pennsylvania system.

405 U.S. at 201, 92 S.Ct. at 772–73.

The facts of the present case differ markedly from the circumstances that induced the Supreme Court in *Overmyer* to uphold the cognovit note judgment against a due process challenge. First, the indicia of equal bargaining power present in *Overmyer* are absent here. Of the two parties to the cognovit note, one is a giant financial institution and the other is a woman who alleges that she needs a driver's license to earn a living and who is too impoverished to pay a $228 judgment. Secondly, unlike the corporation in *Overmyer,* Mrs. Piercy was not represented by counsel when she agreed to sign the cognovit note. Finally, the sole benefit that Mrs. Piercy derived from signing the note was the avoidance of an immediate suspension of her license under section 1404, a statute which was later declared unconstitutional. In *Overmyer* and *Swarb,* Justice Blackmun carefully left open the question whether a cognovit clause obtained under circumstances such as those alleged here could result in a judgment comporting with due process standards. Even granting that a judgment of liability meeting due process standards will satisfy *Bell v. Burson,* whether the cognovit clause judgment would, in the circumstances alleged, meet such standards appears to be a question which itself requires a due process hearing before the judgment can result in a summary license suspension.

5. The majority referred to the issue of procedural due process at two points in its opinion. The court first stated:

In reaching the opposite conclusion, the District Court relied upon *Young v. Cobb,* 419 U.S. 1098, 95 S.Ct. 768, 42 L.Ed.2d 795 (1975), in which the Supreme Court summarily affirmed a three-judge court decision rejecting constitutional challenges to Florida's financial responsibility law. Reliance on *Young v. Cobb* was misplaced, however. It is true, as the District Court noted, that the lower federal courts are bound by the precise holdings of summary affirmances without opinion. *Hicks v. Miranda,* 422 U.S. 322, 344, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). But we have also been admonished that summary affirmances without opinion, while they affirm the judgments, do not necessarily approve of the reasoning by which they were reached. *See Fusari v. Steinberg,* 419 U.S. 379, 388 n. 15, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975); *id.* at 391–92, 95 S.Ct. 533 (Burger, C. J., concurring). A fortiori, if a three-judge court did not actually decide the issue presented in a later case, a summary affirmance means nothing on that issue.

While the Florida statutory scheme challenged in *Young v. Cobb* is similar to the Pennsylvania statute involved here, the plaintiff in that case did not, while Mrs. Piercy does, challenge the state law on procedural due process grounds. Rather, the Florida plaintiff alleged a denial of equal protection and a violation of substantive, rather than procedural, due process. The heart of plaintiff's argument there was that the Florida scheme substantively infringed his right to travel and was indefensible in the absence of a compelling state interest. The three-judge court held that the traditional rational basis standard of review applied to the substantive fourteenth amendment challenge to the state's classification and that Florida had met this standard. The majority opinion gave procedural due process only passing references [5] and Judge Tjoflat's concurring opinion observed:

Plaintiffs do not attack the scheme on procedural due process grounds, but rather complain that it violates substantive due process of law.

For purposes of Plaintiff's contention, *Carnegie v. Dep't of Public Safety,* 60 So.2d 728 (Fla.1952); *Wall v. King,* 206 F.2d 878 (1st

*Young v. Cobb*, No. 72–2064-Civ.JE (S.D. Fla.1974) (three-judge court) (unreported opinion). It can hardly be claimed that the Supreme Court's summary affirmance of *Young v. Cobb* binds other federal courts on an issue never even presented to the court whose judgment was affirmed. Moreover, even if a procedural due process challenge had been made in *Young v. Cobb*, the case would not be binding here because the suspensions in *Young v. Cobb* did not result from a judgment obtained by confession. Thus, the case did not involve the serious questions carefully reserved by the Supreme Court in *Overmyer* and *Swarb*, questions which, far from being foreclosed by the Court's prior opinions, are open and difficult.

The District Court also relied on the Supreme Court's summary affirmance in *MacQuarrie v. McLaughlin*, 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969), of a three-judge court decision [6] upholding a provision of a Massachusetts financial responsibility law imposing a driver's license suspension on an owner not guilty of any negligence in the accident. But the challenge to the statute in *MacQuarrie*, like that in *Young v. Cobb*, was substantive, not procedural. Indeed, since the summary affirmance took place before the Supreme Court's decision in *Bell v. Burson*, that affirmance cannot be understood to be a holding on the *Bell v. Burson* due process right to a pre-termination hearing. Moreover, the suspension in *MacQuarrie* came after a litigated judgment in which the owner was found liable

to the injured party on a respondeat superior basis because Mass.G.L.Ann. ch. 231, § 85A (West) established a prima facie case that the driver of the car was the agent of the owner. There was a full opportunity to litigate the substantive challenge to that statute in the lawsuit and to contest the prima facie case of agency. The suspension took place only thereafter. *MacQuarrie* can by no stretch of the imagination be regarded as deciding the issue of a termination based on a cognovit note judgment.

■ We agree with Mrs. Piercy that, far from being foreclosed by prior decisions of the Supreme Court, her contention that section 1413(a) is unconstitutional when applied without a hearing to coerce payments of cognovit note judgments presents under *Bell v. Burson, D. H. Overmyer Co. v. Frick Co.*, and *Swarb v. Lennox* a substantial claim which should not have been decided by a single district judge. At the same time we are not prepared to hold, as she suggests we might, that the statute as applied to her and those similarly situated is so patently unconstitutional that the single district judge should have granted judgment in her favor. *See Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Reluctant as we are to see even one more three-judge court, we conclude that such a court was required for the decision of this case.

The summary judgment shall be vacated and the case remanded to the district court for the convening of a three-judge district court.

Cir. 1953); and *Bell v. Burson*, 402 U.S. 535, 92 S.Ct. 1586, 29 L.Ed.2d 90 (1971), stand only for the proposition that whether a driver's license be considered a 'right' or a 'privilege,' the license and the freedom to use one's own automobile cannot be taken away by the state without affording procedural due process.

*Young v. Cobb*, No. 72–2064-Civ. JE, at 4 (S.D. Fla.1974) (three-judge court) (unreported opinion).

Later the majority said:

Denial of installment payments is possible, of course, but the fact of judicial recourse satisfies procedural due process.

*Id.* at 7.

Although this second quotation seems to consider the procedural due process issue, it cer-

tainly was not necessary to the decision since the contention was never raised by the plaintiff. Accordingly the statement is only dictum and is not binding on this court. In addition, the statement addresses only the question of whether there is judicial review of a denial of a request to pay the judgment in installments. As this opinion will soon point out, this issue differs from the constitutional question presented here—*i. e.,* whether a hearing is required to determine whether the cognovit note judgment which forms the basis for the summary license suspension comports with due process.

6. *MacQuarrie v. McLaughlin*, 294 F.Supp. 176 (D.Mass.1968) (three-judge court).

WEIS, Circuit Judge, concurring:

In view of the low threshold set out by *Goosby v. Osser*, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), I agree it is necessary to convene a three-judge court in this case. The thrust of plaintiff's position is that §§ 1404 and 1413 form part of an integral plan and since § 1404 has been declared unconstitutional, the validity of § 1413 is undermined insofar as it can authorize a suspension without a hearing. She contends the impending application of § 1404, which would allow suspension of her license before any determination of fault, coerced her into signing the judgment note. Asserting that § 1404 afforded no opportunity for an adequate administrative proceeding before suspension, she says the threat of immediate loss of her operating privileges under that section forced her to choose between giving up her license or signing the judgment note. Her argument is that the confessed judgment which followed default on the note cannot replace an adjudication of liability and is not an admission of fault by her, express or implied, nor even a voluntary agreement to pay. Under her theory, failure to satisfy the judgment cannot validly support her license suspension pursuant to § 1413.

In fairness to the district judge, it should be noted that no such argument was presented to him but was first raised on appeal. Moreover, *Kilfoyle v. Heyison*, 417 F.Supp. 239 (W.D.Pa.1976), which declared § 1404 unconstitutional, was not decided until some months after the Secretary of the Department of Transportation had ordered suspension of plaintiff's license and after she had filed this suit.

In *Kilfoyle v. Heyison, supra*, the court struck down § 1404 because the administrative proceedings to determine the possibility of liability were not adequate. Before entering the decree, the court gave the Department of Transportation an opportunity to adopt regulations to remedy the deficiencies. Only after it refused did the court find § 1404 unconstitutional as administered. *Kilfoyle's* conclusion that the procedures were inadequate was based on *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), which held that to afford the licensee due process a state must provide for an inquiry into whether there is reasonable possibility of fault or liability before suspension. The flexible nature of due process in the context of license revocation was most recently explored in *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977). If the three-judge court should determine that the *Dixon* case requires a reexamination of *Kilfoyle's* holding, then it may not be necessary to review the use of cognovit notes.

I agree with the majority that the judgment note issue is not foreclosed by *Young v. Cobb*, 419 U.S. 1098, 95 S.Ct. 768, 42 L.Ed.2d 795 (1975), or *MacQuarrie v. McLaughlin*, 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969), because in neither case was the judgment secured by use of a cognovit clause. I am not willing to assume, however, that an operator's license may not be suspended for nonpayment of a vehicle accident judgment simply because it was entered on the authority of a cognovit clause.

The disparate financial condition of the parties to this case should not blind one to the fact that the victim of an uninsured motorist's negligence may be indigent and more in need of his vehicle to make a living than the negligent party. *See Shultz v. Heyison*, 439 F.Supp. 857 (1975). The use of a judgment note eliminates the delay and expense necessary to secure a judgment on the merits by a complete trial or, more likely, on default. The cognovit clause is an effective and efficient method of resolving numerous small claims and indeed may save the uninsured owner or operator litigation or other expenses. Particularly if the judgment note contains a stated admission of liability, no convincing argument has yet been made that it is not a valid predicate for license suspension. In the rare instance where fraud, coercion, or a similar defense is asserted, procedures to strike the judgment or appeal the suspension to the court are available.

I concur with the majority's conclusion that we should not enter judgment for the plaintiff and that the case should be remanded for the convocation of a three-judge court.