**Joyce Lynn McKAY et al.**
**v.**
**Seymour G. HEYISON et al.**

**Civ. A. No. 78–2548.**

United States District Court,
E. D. Pennsylvania.

Dec. 5, 1978.

Lawrence H. Rudnick, Legal Aid of Chester, West Chester, Pa., for plaintiffs.

Mark N. Cohen, Asst. Atty. Gen., Philadelphia, Pa., Mark N. Cohen, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This proposed class action challenges the procedure by which the Pennsylvania Department of Transportation[1] withdraws a driver's operating privileges for reasons of physical or mental incompetency. 75 Pa.C. S.A. §§ 1517–19; 1550. Plaintiffs assert that the recall scheme violates the due process clause of the Fourteenth Amendment. They seek to enjoin the withdrawal of licenses pursuant to this statute. Because we conclude that neither the named plaintiffs nor the would-be intervenor has standing to maintain this action, we will deny the motion for class certification and the mo-

tion to intervene and will, *nostra sponte*, dismiss the suit.

## I. THE STATUTE:

Section 1517 of Title 75 of the Pennsylvania Code establishes a Medical Advisory Board charged with formulating physical and mental criteria for a driver's license. 75 Pa.C.S.A. § 1517. This Board defines disorders affecting the ability of a person to drive safely, 75 Pa.C.S.A. § 1518(a), and all physicians authorized by the Commonwealth to practice in the fields of these disabilities are required to report to the Department of Transportation any person over fifteen years of age diagnosed as having one of the specified disorders. 75 Pa.C. S.A. § 1518(b). The Bureau of Traffic Safety of the Department of Transportation receives these reports and reviews them for cause to believe that a licensed driver may not be physically or mentally qualified for operating privileges.

If there is cause to believe that an operator may be incompetent, the Bureau can authorize a physician to examine the driver. Whether the Bureau seeks an examination or not, the licenseholder may submit a written report by a physician of his choice. The medical reports and testimony are then considered and the competency of the driver is determined. 75 Pa.C.S.A. § 1519(a).[2] The operator has no right to an adversary hearing before this determination is made.

The Department must recall the operating privileges of any person whose incompetency is established by the medical evidence. 75 Pa.C.S.A. § 1519(c). A standard notice form (TS–28/7–77) is mailed to the driver informing him of the recall and demanding return of the operator's license.

1. Defendant Heyison is Director, Bureau of Traffic Safety, Department of Transportation for the Commonwealth of Pennsylvania. The Bureau of Traffic Safety enforces the challenged statutory provisions.

2. Section 1519(a), the heart of plaintiffs' complaint, reads in full as follows:
   "The Department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examination to be made

or who shall designate any other qualified physician. The licensed driver or applicant may cause a written report to be forwarded to the department by a physician of the driver's or applicant's choice. Vision qualification shall be determined by an optometrist or opthalmologist. The Department shall appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or the applicant to drive."

Each driver is told that "physical examination reports submitted by a physician of your choice" reveal a specified disorder incompatible with safe operation of a motor vehicle and that "[i]f your condition improves, your doctor should submit a new physical examination report for reevaluation by our Medical Advisory Board." The recall is for an indefinite period until satisfactory proof of competency is presented to the Bureau of Traffic Safety. 75 Pa.C.S.A. § 1519(c).

Any person aggrieved by recall of his operating privileges may appeal to the Court of Common Pleas. 75 Pa.C.S.A. § 1519(c); 1550. An appeal automatically stays the recall until the matter is finally determined. 75 Pa.C.S.A. § 1550(b). The effective date of the recall is clearly stated on the mailed form and is at least thirty days after the date of notice. Conspicuously boxed in the lower left corner of the notice form is the following note: "You have a right to appeal to the Court of Common Pleas of the County of your residence within thirty (30) days of the date of this notice. If you appeal, your license will be reinstated pending a final decision by the Court."

The judicial review provisions of section 1550 govern a driver's appeal from the recall of his operator's privileges. Subsection (c) states in pertinent part that: "[t]he court is hereby vested with jurisdiction and it shall be its duty . . . to determine whether the petitioner is in fact the person whose operating privilege is subject to recall . . . ." 75 Pa.C.S.A. § 1550(c). Whether this statement calls for a de novo hearing in the Court of Common Pleas, as the statute expressly did before the adoption of this specific language in 1976, or merely for an identification procedure in which the court matches the appellant with the operator investigated by the Department, as the statutory words strongly suggest, is unsettled. Despite the unmistakable literal significance of subsection (c), some Courts of Common Pleas have apparently found authority to conduct de novo hearings on appeal. We infer this from defendants' undisputed statistics that of 39 decided recall appeals, 23 have resulted in reversal of the incompetency determination—a percentage too large plausibly to support a conclusion that the statute is being literally applied. Thus, although a driver whose incompetency has been determined by the Bureau of Traffic Safety can automatically stay the recall of his license by appealing to the Court of Common Pleas, the nature of the hearing that he will be given there is uncertain.[3]

## II. PLAINTIFFS' FACTS:

The second amended complaint was filed by two plaintiffs, Joyce Lynn McKay and Alice D. Wall. On June 15, 1978 McKay received a form notice dated June 12, 1978 informing her that her motor vehicle operating privileges would be indefinitely recalled effective July 17, 1978 because of a reported addiction to narcotics. McKay alleges that she has no drug problem and is competent to drive. On June 30, 1978 plaintiff Wall received a form dated June 28 notifying her that her driver's license would be indefinitely recalled effective August 2, 1978 because of a "neuropsychiatric condition" that Wall contends does not impair her ability to operate safely a motor vehicle. Neither McKay nor Wall was given a hearing before the incompetency determination was made. Both named plaintiffs appealed the recall notices to the Court of Common Pleas of Chester County. McKay's hearing was held on September 14, 1978. Her appeal has not been decided yet. Plaintiff Wall's appeal was sustained by agreement. Thus, neither McKay nor Wall has had to surrender her license.

---

**3.** Because of our conclusion that complainants lack standing, we cannot decide whether this uncertainty in state law makes abstention under *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), appropriate. The standing decision is primary, and thus decided first, because it is a constitutional prerequisite to our jurisdiction. See III *infra.*

On October 13, 1978 Michael Dougherty moved to intervene in this matter.[4] Dougherty was notified on August 24, 1978 that effective September 28th his operator's privileges would be recalled because of a reported "neuropsychiatric condition". He appealed to the Court of Common Pleas of Chester County and a hearing has been scheduled. Thus, like McKay and Wall, Dougherty, despite the Bureau of Traffic Safety determination that he is incompetent to operate a motor vehicle, is still driving.[5]

### III. STANDING:

That a litigant seeking to invoke the federal judicial process must have standing to maintain the proposed suit is axiomatic. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Plaintiffs must allege "some threatened or actual injury resulting from the putatively illegal action" before a federal court may assume jurisdiction. *Linda R. S. v. Richard D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). This "actual injury" prerequisite is "generally regarded as constitutionally mandated" by the "case or controversy" predicate of Article III of the Constitution, L. Tribe, *American Constitutional Law* § 3–18 at 80 (1978), and is one of the fundamental limitations on the role of the judiciary in our system of government. The standing requirement of a "personal stake in the outcome" *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) assures that the federal courts will not gratuitously exercise their power. Allegations of abstract injury are unsatisfactory. The alleged injury must be real and immediate, *Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), to satisfy the Article III limitation.

None of the complaining parties in this suit has alleged an "actual injury" sufficient to satisfy the standing prerequisite to federal jurisdiction. Each of the complainants appealed the Department of Transportation's incompetency determination to the Court of Common Pleas of Chester County, thereby automatically staying the effective date of the recall until the matter is finally decided by the court. Each driver is still in possession of his driver's license and each may lawfully operate a motor vehicle in the Commonwealth of Pennsylvania. None has been without operating privileges for even an instant. Simply stated, we can perceive no concrete harm alleged by plaintiffs. Consequently, we conclude that McKay, Wall and Dougherty lack standing.[6]

Plaintiffs urge that our conclusion puts them to "the Hobson's choice of litigating the constitutionality of the statute and losing their operating privileges during the pendency of the suit or filing a state court appeal." Plaintiffs' Reply Memorandum to Defendants' Response to Motion for Class Certification at 2–3. We doubt that a trou-

---

4. The proposed "third amended complaint" adding Dougherty also drops Wall as a plaintiff.

5. Given our decision that the named plaintiffs and would-be intervenor do not have standing to maintain this action, we cannot reach the question whether the pendency of McKay's and Dougherty's Court of Common Pleas appeals requires us to abstain under the principles stated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

6. McKay, Wall and Dougherty did of course have to initiate the appeal process that preserved their driving privileges pending a Common Pleas court decision. However, at least on these facts, this responsibility is not an "actual injury" in the constitutional signifi-

cance of that concept. The burdens involved in petitioning the Court of Common Pleas—gathering medical evidence, preparing testimony, perhaps obtaining counsel, etc.—are functionally those that plaintiffs would have to carry in connection with a pre-recall hearing initiated by the Department of Transportation, which is the procedure that plaintiffs complain is unconstitutionally absent here. These responsibilities are thus not only ineluctable, but are also affirmatively sought by plaintiffs, albeit at an earlier time in the process. Given complainants' desire to take on the responsibilities of a hearing, to conclude that the burdens incident to the § 1550 appeal are an "actual injury" would be inconsistent.

blesome dilemma is presented. Our holding is simply that plaintiffs here are uninjured because still driving, not that filing the state court appeal forever precludes federal court consideration of the due process issue. We of course cannot decide the latter point unless and until properly confronted with the question in a live controversy. We pause to note, however, our belief that plaintiffs' concern is unfounded because the constitutional issue will remain unlitigated only so long as plaintiffs are uninjured, a situation that by definition harms no one.

Nor is complainants' contention that our conclusion is contrary to precedent a persuasive argument. Plaintiffs cite three cases that they say contradict our decision: *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Kilfoyle v. Heyison,* 417 F.Supp. 239 (W.D.Pa.1976). In *Dixon v. Love,* the Supreme Court heard a challenge to the constitutionality of an Illinois procedure for suspending driver's licenses even though plaintiff there retained his operating privileges through the statutory "hardship" provision. Neither the majority opinion nor either of the two concurrences once mention the standing issue. Further, plaintiff obtained a hardship permit only when application for such relief was made a condition of the temporary restraining order that he was granted. *Dixon v. Love,* 431 U.S. at 111, 97 S.Ct. 1723. Thus, the complainant there had first come to federal court in the posture that a plaintiff would be in here if he did not take a § 1550 appeal from a recall notice, a situation critically distinct from that actually involved in this case. Because *Dixon v. Love* thus arose on significantly different facts, and because the standing question was never confronted, we do not consider ourselves precluded from dismissing this suit.

*Mathews v. Eldridge* and *Kilfoyle v. Heyison* are also not preclusive; indeed, they are not even relevant. The holding in *Mathews* to which plaintiffs point is simply a statement that an individual challenging termination of Social Security disability benefit payments need not raise his constitutional claim to a pretermination hearing in the administrative review proceeding to raise it in federal court. *Mathews v. Eldridge,* 424 U.S. at 329–330, 96 S.Ct. 893. The Court nowhere hinted that if a plaintiff had raised his claim in the administrative process and thereby automatically stayed termination of his benefits, he would nonetheless have standing in federal court to challenge the termination decision. The cited holding is therefore inapposite. *Kilfoyle,* which invalidated a Pennsylvania procedure for suspending the driver's license of an uninsured motorist involved in an accident, is irrelevant because of a fundamental factual distinction. Nothing in the court's opinion suggests that plaintiffs there availed themselves of the Court of Common Pleas appeal. We must assume that the operating privileges of the *Kilfoyle* plaintiffs were actually suspended and the case is therefore not pertinent to this suit where all named plaintiffs are still driving and are accordingly uninjured.

CONCLUSION:

◼ Because complainants McKay, Wall and Dougherty have alleged no actual injury, they lack standing to maintain a due process challenge to the license recall provisions of the Pennsylvania Motor Vehicle Code. Thus, we must deny the motion of Dougherty to intervene. The motion of McKay and Wall to certify a class must also be denied because "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class. [citations omitted]" *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). With all proposed plaintiffs ineligible to bring suit, this action is orphaned and we will dismiss it on our own motion.[7]

---

7. We note that the record has recently been supplemented to include two orders by the

Court of Common Pleas for Chester County— one affirming the Commonwealth's recall of

plaintiff McKay's license and the other staying that recall pending appeal to the Commonwealth court. *Commonwealth v. McKay*, No. 169—P Misc. Term, 1978. Because McKay is still lawfully driving, our decision here is not affected by these orders.