614 F.2d 899
 McKAY, Joyce Lynn, Individually and on behalf of all others
similarly situated, and Wall, Alice D., Individually and on
behalf of all others similarly situated, Dougherty, Michael
(Proposed Intervenor in D. C.), Appellant,
v.
HEYISON, Seymore G., Individually and in his official
capacity as Director of the Bureau of Traffic Safety for the
Pennsylvania Department of Transportation, and Pulakos,
George, Individually and in his official capacity as Acting
Secretary of Transportation of the Commonwealth of Pennsylvania.
 No. 79-1315.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 19, 1979.
Decided Feb. 4, 1980.
 
 Lawrence H. Rudnick, Legal Aid of Chester County, Inc., West Chester, Pa., for appellant.
 Mark N. Cohen (Argued), Asst. Atty. Gen., Michael von Moschzisker, Deputy Atty. Gen., Edward G. Biester, Jr., Atty. Gen., Dept. of Justice, Philadelphia, Pa., for appellees.
 Before GIBBONS, HIGGINBOTHAM, Circuit Judges, ZIEGLER, District Judge.*
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This case is an appeal from a denial by the district court of the appellant's motion to intervene below and from a denial of class certification. Both the original plaintiffs in this case and the appellant challenged the procedure by which the Commonwealth of Pennsylvania withdraws the operating privileges of licensed drivers with certain disabilities. The district court simultaneously denied the original plaintiffs' motion for class certification and the appellant's motion for intervention, and dismissed the plaintiffs' case. These decisions were based on its conclusion that both the plaintiffs and the intervenor lacked standing. Only the intervenor has appealed from these decisions. Because we believe the district court's denial of intervention cannot be justified on standing grounds, we will reverse and remand for a determination in the district court on whether permissive intervention should have been granted the appellant under Rule 24(b) of the Federal Rules of Civil Procedure.
 
 I. Facts
 
 2
 The underlying controversy in this case involves the constitutionality of the statutory procedures by which the Pennsylvania Department of Transportation, pursuant to Pa.Stat.Ann. Tit. 75 §§ 1517-19; 1550 (Purdon 1969) (hereinafter § 1517-19; 1550), withdraws the operating privileges of licensed drivers on the basis of reports of physical or mental disability.[1]
 
 
 3
 Under Pennsylvania law a Medical Advisory Board (the board) composed of government representatives and medical professionals has responsibility for establishing physical and mental standards for the licensing of drivers. § 1517. The standards are, in turn, enforced by the Department of Transportation (the department). The board formulates a list of "disabilities affecting the ability of a person to drive safely." § 1518(a). Physicians authorized to treat these disabilities must report to the department all cases in which they are diagnosed in a person over fifteen years of age. § 1518(b). The department may also supplement this record when it has reason to believe an operator is not qualified by selecting a physician to examine the operator and submit a report. § 1519(a). The operator himself may also choose a physician to perform an examination and submit his findings to the department. Id.
 
 
 4
 If the department determines on the basis of its review that an operator is not medically competent to drive, it is required to recall his license. It mails the operator a form notice informing him that a physical examination has determined his inability to drive safely and that his license will be recalled.
 
 
 5
 Up to the point when the initial determination of incompetency is made and the notice of recall is sent, Pennsylvania does not provide for an adversary hearing. Before the notice of recall becomes effective, however, the operator has a right within 30 days of mailing to appeal the recall to the appropriate Pennsylvania trial court having jurisdiction over the appeals. §§ 1519(c), 1550(a).[2] The timely filing of this appeal stays the recall until a "final determination of the matter." § 1550(b). The scope of review by the state court is limited statutorily to a determination of "whether the petitioner is in fact the person whose operating privilege is subject to the recall," § 1550(c), though the parties disagree on how this should be interpreted. The appellant claims the review is pro forma and merely allows scrutiny of whether the person whose license has been recalled is in fact the person the medical report identifies as possessing the listed disability.[3] The Commonwealth of Pennsylvania contends that in practice the Pennsylvania courts have often reviewed the underlying medical evaluation of incompetency which provides the justification for the initial identification of the operator.[4] If the license is ultimately recalled, the suspension continues under this provision "for an indefinite period until satisfactory evidence is presented to the department" of competency. § 1519(c). The language of the statute thus indicates that no hearing need be provided for the operator before the notice of withdrawal is sent, though there is a dispute on whether a meaningful hearing is provided for challenging the basis of the withdrawal after that notice of recall is sent but before it becomes effective.
 
 
 6
 On June 15, 1978 Joyce McKay received a notice informing her that her driver's license would be recalled effective July 17, 1978 because of a reported addiction to narcotics. On June 30, 1978 Alice Wall also received a form notice notifying her that her drivers license would be indefinitely recalled effective August 2, 1978 because of a reported neuropsychiatric condition. Both McKay and Wall appealed their recall notices to the Court of Common Pleas, thereby staying their recalls. While these appeals were pending, McKay and Wall brought a class action suit in federal court to have the statute declared unconstitutional under the due process clause of the fourteenth amendment. The suit was brought on behalf of all persons who had been or would be subject to recall under Section 1519, and who had not been given a pre-suspension or prompt post-suspension hearing "to ascertain their competence to operate a motor vehicle."
 
 
 7
 On October 13, 1978, before the district court had ruled on the plaintiffs' motion for class certification, Michael Dougherty moved to intervene into the suit. Dougherty had been notified on August 24, 1978 that his operator's privileges would be recalled because of a neuropsychiatric condition, and, like Wall and McKay, he had stayed suspension of his license by appealing the recall to the Court of Common Pleas. His motion to intervene was based on a claim of intervention of right under Rule 24(a) Fed.R.Civ.P., or, alternatively, permissive intervention under Rule 24(b).
 
 
 8
 Before the district court ruled on any of these motions, plaintiff Wall's appeal was sustained by agreement. The recall of plaintiff McKay's license, on the other hand, was upheld by the Court of Common Pleas of Chester County, Commonwealth of Pennsylvania v. Joyce Lynn McKay, M.D. No. 169-P (Chester County, 1978), though, according to the parties, she brought an appeal from that decision to the Commonwealth Court. Her driving privileges had still not been suspended as of the date of oral argument in this court.
 
 
 9
 On December 7, 1978 the district court denied Dougherty's motion to intervene; McKay and Wall's motion to certify the class; and dismissed the plaintiffs' case all on the grounds that McKay, Wall, and Dougherty lacked standing. The court pointed out that McKay, Wall and Dougherty had not as of the day of its decision been deprived of their operating privileges and therefore had not suffered any injury capable of supporting standing. It discounted the fact that McKay's recall had been upheld by the Court of Common Pleas because McKay sought to represent a class of persons who had "received a recall notice without a prior hearing." It concluded that "the suit is not viable in its present posture regardless of the change in McKay's position." McKay v. Heyison, 80 F.R.D. 694, 698 n.7 (E.D.Pa.1978).
 
 
 10
 McKay and Wall did not appeal the decision of the district court, but the attempted intervenor, Dougherty, filed a timely appeal to this court from the denial of his motion for intervention and the plaintiffs' motion for class certification. Such a denial of a motion for intervention of right is clearly appealable under the law in this circuit and does not depend on the merits of the motion. McClune v. Shamah, 593 F.2d 482, 485 (3d Cir. 1979); Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976). We must determine here whether the district court's denial was justified because the intervenor lacked standing, or whether its denial can be justified, alternatively, on the ground that the intervenor did not meet the statutory requirements for intervention of right and permissive intervention under Rule 24.[5]
 
 II. Standing of the Intervenor
 
 11
 Generalizations about the precise requirements of standing must be made with care, for the law of standing has often been confusing and highly sensitive to the particular factual context to which it is applied.
 
 
 12
 The doctrine is derived from the "case and controversy" requirement of Article III of the Constitution. Its purpose, as the Supreme Court has repeatedly indicated, is to assure, inter alia, that the parties alleging jurisdiction have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).
 
 
 13
 The Supreme Court recently noted the two prerequisites a litigant must meet to satisfy Article III standing "injury in fact and a substantial likelihood that the judicial relief requested will prevent or reduce the claimed injury." Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 79, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). Certain prudential considerations may also be involved to deny standing, see, e. g. Flast v. Cohen, 392 U.S. 83, 99 & n.20, 88 S.Ct. 1942, 1952 & n.20, 20 L.Ed.2d 947 (1968), but they are not at issue in this case. The only question is whether the district court was correct in denying standing to the intervenor because the mere possibility that his license would be revoked did not provide the requisite injury in fact.
 
 
 14
 The Supreme Court's interpretation of injury in fact, however, has only required that the plaintiff face a sufficiently realistic prospect of current or future injury so that an adversarial conflict results, not that the plaintiff must necessarily have suffered an actual injury at the time he brings the suit. The Court recognized this most recently in Babbitt v. United Farm Workers National Union, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), when it found a "case and controversy" in a suit by farmers and a farmer union challenging the election procedures, consumer publicity restrictions and criminal sanctions of an Arizona farm labor statute. The possibility that the plaintiffs would violate these provisions in the future and that the statute's sanctions would be imposed created sufficient adversity to support standing. The Court reasoned:
 
 
 15
 A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). But "(o)ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." Pennsylvania v. West Virginia, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923); see Regional Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974); Pierce v. Society of Sisters, 268 U.S. 510, 526, 45 S.Ct. 571, 574, 69 L.Ed. 1070 (1925).
 
 
 16
 When contesting the constitutionality of a criminal statute, "it is not necessary that (the plaintiff) first expose himself to actual arrest or prosecution to be entitled to challenge (the) statute that he claims deters the exercise of his constitutional rights." Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974); see Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); Evers v. Dwyer, (358 U.S. 202, 204, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958)). When the plaintiff has alleged an intention to engage in a course of conduct, arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." Doe v. Bolton, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973).
 
 
 17
 99 S.Ct. at 2308-09 (brackets in original).
 
 
 18
 The Court did find the plaintiffs lacked standing to challenge a provision allowing an employer to deny employee access to his premises, but its decision was based on the fact that the plaintiffs' constitutional claim only concerned certain types of large employers. The Court was willing to assume that the plaintiffs would seek access, but it was too speculative to assume also that not only some employers but these large employers would in turn deny access, thereby invoking the penalties in the statute. In the present case, not only has the plaintiff already assumed the status that would invoke the force of the statute, but the state has initiated proceedings under the statute. 99 S.Ct. at 2312.[6]
 
 
 19
 Indeed, in a civil case closely analogous to the present factual context, the Supreme Court did not deny standing to a plaintiff challenging the constitutionality of the procedures through which his license had been recalled, even though his license had not been actually suspended. Dixon v. Love, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).[7] The plaintiff in Dixon had been convicted three times for traffic offenses, and his license was suspended under a state statutory point scheme. He did not immediately file for an administrative review of the suspension, but instead initiated a class action suit in federal court challenging the constitutionality of the state procedures and requesting a temporary restraining order to prevent suspension of his license. The lower court granted the temporary restraining order, but only on the condition that he apply for an administrative hardship permit. Even though the permit was granted, and the plaintiff was never in fact deprived of his license, the Supreme Court did not dismiss for lack of jurisdiction.
 
 
 20
 The district court in the present case distinguished Dixon on the grounds that when the suit in Dixon was brought the plaintiff had not initiated the state proceeding that would have prevented the injury. There were thus two intervening events that needed to occur to avoid injury to the plaintiff filing for a hardship permit and granting of that permit rather than, as in this case, just one reversal of the recall in the Court of Common Pleas. This subtle distinction, however, masks the fundamental similarity of the two cases; neither of the plaintiffs' licenses was actually suspended, and the prospect of a suspension was substantially the same. This is not to say that when the prospect of future injury becomes truly speculative a plaintiff should have standing. In a case such as this, however, where the plaintiff is already in the condition which would invoke a penalty under the statute, and the administrative agency has already initiated proceedings against the plaintiff, the injury in fact requirement of standing has been and should be met.[8]
 
 
 21
 The appellees have cited cases where the threat of injury was sufficiently remote to preclude standing, but they are distinguishable. In Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), the Supreme Court refused to grant standing to a plaintiff who had challenged a state law prohibiting distribution of anonymous literature in connection with an election campaign. The decision was based on the extremely low probability that the plaintiff would ever violate the law and be prosecuted, for the plaintiff had wanted to distribute anonymous literature against a congressman who had been appointed to the bench and undoubtedly would not run for reelection. In contrast, in the present case not only is the plaintiff in the circumstances which would invoke the force of the statute, but the attempt to invoke that force by the defendant recall of the license has already occurred. Similarly, their reliance on O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), is misplaced. In O'Shea the Supreme Court refused to find standing because the alleged potential injury was to a third party, not to the plaintiff. In contrast, in this case, there is threatened injury to the intervenor, Dougherty.
 
 III. Intervention
 
 22
 Even if the district court erred in basing its denial of intervention on the grounds that the intervenor did not have standing, its denial still might be justified on the grounds that the intervenor did not meet the requirements for intervention of right and permissive intervention under Rule 24.
 
 
 23
 Intervention of right under Rule 24(a) requires, first, that the applicant have "a sufficient interest in the matter, and that their interest would be affected by the disposition"; and, second, that "their interest was not adequately represented by the existing parties." Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir. 1976).[9] In the present case the intervenor argues that his interest in not having his license recalled through constitutionally impermissible procedures might as a practical matter have been impeded because the case of the name plaintiffs, who made his exact claim, might have become moot, and the case dismissed. Several courts have recognized that the "inadequate representation" requirement of intervention of right is established where the name plaintiff in a class action no longer has standing, and intervention by class members is needed to sustain the viability of the suit. See, e. g., Washington v. Wyman, 54 F.R.D. 266, 270-71 (S.D.N.Y.1971); Gaddis v. Wyman, 304 F.Supp. 713, 715-16 (S.D.N.Y.1969).
 
 
 24
 The intervenor in this case, however, was adequately represented at the time of dismissal because the claim of at least one named plaintiff, McKay, was not moot. The plaintiff McKay also stood in the same factual position as the intervenor, asserted the same constitutional challenges, and was represented by the same attorney. See McClune v. Shamah, 593 F.2d 482, 486 (3rd Cir. 1979). Even if the possibility of mootness was sufficient to establish "inadequate representation," moreover, the interests of the intervenor would not have been impeded because intervention was attempted and denied before certification of the class. If the plaintiffs' case became moot, its dismissal before certification would not ordinarily result in any prejudice to the intervenor's interests. He could simply bring his own suit and the prior decision would be without effect. To allow intervention of right because the case of a plaintiff who is not a class representative is moot would impermissibly allow the intervenor to assert claims that the plaintiff is incapable of asserting and thus "to breathe life into a non-existent suit." Fuller v. Volk, 351 F.2d 323, 328 (3rd Cir. 1965). This court reached a similar conclusion in McClune v. Shamah, when we upheld a denial of a motion for intervention by a limited partnership into a suit brought by the individual partners because, inter alia, the limited partners did not have standing to assert the claim the intervenor wished to present. We noted:
 
 
 25
 A motion for intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiffs may have stated causes of action that they have no standing to litigate.
 
 
 26
 593 F.2d at 486. We need not and do not decide whether intervention of right might be required in a case where there is a long delay before the class is certified and the nature of the claim is such that it inevitably becomes moot with the passage of time. Cf. Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). No such delay or claims are involved in this case.
 
 
 27
 The fact that intervention of right under Rule 24(a) was not permitted, however, does not require affirmance, for the appellant meets the requirements for permissive intervention under 24(b).[10] In order for the district court to exercise its discretion, Rule 24(b) requires only that the intervenor share a "question of law or fact in common" with the original plaintiffs. "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b). The district court in this case ruled solely on the question of standing and did not exercise its discretion on the question of permissive intervention.
 
 
 28
 The appellees claim that as a matter of law permissive intervention cannot be granted to Dougherty because the original plaintiffs lacked standing. They point to the language in McClune v. Shamah, 593 F.2d at 486, stating that "(a) motion for intervention under Rule 24 is not an appropriate device to cure a situation in which plaintiff may have stated causes of action that they have no standing to litigate."
 
 
 29
 At the outset, however, we note that the decision in McClune merely upheld a denial by the district court of a motion for intervention of right and permissive intervention, and did not hold that permissive intervention could not have been permitted by the district court as a matter of law. In the earlier case, Fuller v. Volk, we specifically held that a district court could hear the case of the intervenor when the main case lacked jurisdiction if this would avoid unnecessary delay in bringing a new suit. We stated:
 
 
 30
 (A) court has discretion to treat the pleading of an intervenor as a separate action in order that it might adjudicate the claims raised by the intervenor. . . . This discretionary procedure is properly utilized in a case in which it appears that the intervenor has a separate and independent basis for jurisdiction and in which failure to adjudicate the claim will result only in unnecessary delay. By allowing the suit to continue with respect to the intervening party, the court can avoid the senseless "delay and expense of a new suit, which at long last will merely bring the parties to the point where they now are." Hackner v. Guaranty Trust Co., 117 F.2d (95,) 98 ((2nd Cir.) cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941)).
 
 
 31
 351 F.2d at 328-29 (citations omitted).
 
 
 32
 In any event, one of the original plaintiffs in this case, Joyce McKay, clearly had standing at the time the case was dismissed, for she stood in the same procedural position at the time of trial as Michael Dougherty, who we held above had standing. While the appeal of the other plaintiff, Alice Wall, had been sustained before the decision of the district court and her claim mooted, McKay's suit remained viable and capable of supporting a motion for intervention.
 
 
 33
 Alternatively, appellees may be claiming that even if permissive intervention could have been allowed below, once the plaintiffs' cases had been dismissed below and they had failed to bring an appeal, no viable suit existed into which Dougherty could intervene. Dougherty's appeal from a denial of intervention after dismissal of the main case would thus "breathe life into a 'non-existent' lawsuit" in contravention of McClune v. Shamah. This argument, however, appears to be largely inconsistent with the rationale and approach adopted in Fuller v. Volk. In that case, after dismissing the appeal of the original plaintiffs for lack of jurisdiction, we remanded for a determination in the district court on whether there was an independent basis for jurisdiction for the intervenor, and if so, an exercise of discretion on permissive intervention. The fact that the case of the original plaintiff had been dismissed in the Court of Appeals did not prevent further consideration of the intervenor's claims. More recently, in U. S. Steel Corp. v. EPA, 614 F.2d 843 (3rd Cir. Dec. 31, 1979), we specifically allowed an intervenor to challenge on the circuit court level a regulation of the Environmental Protection Agency, even though the case of the original petitioner was voluntarily dismissed in the Court of Appeals prior to consideration of the merits.
 
 
 34
 McClune is not to the contrary, moreover. That decision was based on the lack of standing of the original plaintiffs to make the intervenor's claim in the district court. 593 F.2d at 486. At the time Dougherty moved to intervene in the district court the name plaintiffs were asserting his exact claim and it was only the erroneous dismissal on standing grounds that terminated it. We feel that when a district court erroneously dismisses the main case and simultaneously denies a motion for intervention, the appeal by the intervenor from the denial of intervention does not breathe new life into a non-existent lawsuit. To hold otherwise might preclude appeals by individuals who had been improperly denied intervention even though they might be prejudiced by the decision below and the failure of the plaintiffs to appeal that judgment.
 
 
 35
 We hold that on the present facts it would not have been an abuse of discretion for the district court to have granted permissive intervention. Since the district court did not make any determination on whether permissive intervention should have been allowed, we will reverse and remand its denial of intervention and, if the court grants intervention, the court may then consider anew the class certification issue.[11]
 
 
 
 *
 Honorable Donald E. Ziegler of the United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Pa.Stat.Ann. Tit. 75 § 1517. Medical Advisory Board
 (a) Membership. There shall be a Medical Advisory Board consisting of 13 members appointed by the secretary. The board shall be composed of an authorized representative from the Department of Transportation, Department of Justice, Governor's Council on Drug and Alcohol Abuse, Department of Health, Pennsylvania State Police and professionals as follows: One neurologist, one doctor of cardiovascular disease, one doctor of internal medicine, one general practitioner, one ophthalmologist, one psychiatrist, one orthopedic surgeon and one optometrist.
 (b) Formulation of regulations. The board shall formulate rules and regulations for adoption by the department on physical and mental criteria including vision standards relating to the licensing of drivers under the provisions of this chapter.
 Pa.Stat.Ann. Tit. 75 § 1518. Reports on mental or physical disabilities or disorders.
 (a) Definition of disorders and disabilities. The Medical Advisory Board shall define disorders characterized by lapses of consciousness or other mental or physical disabilities affecting the ability of a person to drive safely for the purpose of the reports required by this section.
 (b) Reports by medical personnel. All physicians and other persons authorized to diagnose or treat disorders and disabilities defined by the Medical Advisory Board shall report to the department, in writing, the full name, date of birth and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days.
 (c) Responsibility of institution heads. The person in charge of every mental hospital, institution or clinic, or any alcohol or drug treatment facility, shall be responsible to assure that reports are filed in accordance with subsection (b).
 (d) Confidentiality of reports. The reports required by this section shall be confidential and shall be used solely for the purpose of determining the qualifications of any person to drive a motor vehicle on the highways of this Commonwealth.
 (e) Use of report as evidence. No report forwarded under the provisions of this section shall be used as evidence in any civil or criminal trial except in any proceeding under section 1519(c) (relating to determination of incompetency).
 (f) Immunity from civil and criminal liability. No civil or criminal action may be brought against any person or agency for providing the information required under this system.
 Pa.Stat.Ann. Tit. 75 § 1519. Determination of incompetency.
 (a) General rule. The department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examination to be made or who shall designate any other qualified physician. The licensed driver or applicant may cause a written report to be forwarded to the department by a physician of the driver's or applicant's choice. Vision qualifications shall be determined by an optometrist or ophthalmologist. The department shall appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or the applicant to drive.
 (b) Confidentiality of reports and evidence. Reports received by the department for the purpose of assisting the department in determining whether a person is qualified to be licensed are for the confidential use of the department and may not be divulged to any person or used as evidence in any trial except that the reports may be admitted in proceedings under subsection (c) and any physician or optometrist conducting an examination pursuant to subsection (a) may be compelled to testify concerning observations and findings in such proceedings. The party calling the physician or optometrist as an expert witness shall be obliged to pay the reasonable fee for such testimony.
 (c) Recall of operating privilege. The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle. Any person aggrieved by recall of the operating privilege may appeal in the manner provided in section 1550 (relating to judicial review).
 Pa.Stat.Ann. Tit. 75 § 1550. Judicial review.
 (a) General rule. Any person denied a driver's license or whose operating privilege has been recalled, canceled, suspended or revoked by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).
 (b) Supersedeas. The filing of the petition shall operate as a supersedeas and no recall, suspension, cancellation or revocation shall be imposed against such person until final determination of the matter.
 (c) Proceedings of court. The court shall set the matter for hearing upon 30 days written notice to the department and determine whether the petitioner is in fact the person whose operating privilege is subject to the recall, suspension, cancellation or revocation.
 
 
 [2]
 Sections 1519(c) and 1550(a) were amended effective June 27, 1978 to allow appeals to "the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 1978 Pa.Laws 202, No. 53. Previously, appeals were permitted solely to the Court of Common Pleas
 
 
 [3]
 This interpretation is not only suggested by the wording of the present provision, but also by the fact that the prior provision, which was amended in 1976 to its present form, had specifically allowed de novo review
 
 
 [4]
 The district court in this case noted the Commonwealth's "undisputed statistics that of 39 decided recall appeals, 23 have resulted in reversal of the incompetency determination a percentage too large plausibly to support a conclusion that the statute is being literally applied." It concluded, "(t) hus, although a driver whose competency has been determined by the Bureau of Traffic Safety can automatically stay the recall of his license by appealing to the Court of Common Pleas, the nature of the hearing that he will be given there is uncertain." McKay v. Heyison, 80 F.R.D. 694, 696 (E.D.Pa.1978)
 
 
 [5]
 We expressly do not consider, as the district court did not, whether the case should have been dismissed for reasons of abstention under Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)
 
 
 [6]
 The Court in Babbit also held that the district court improperly considered the constitutionality of an arbitration provision because the plaintiffs had never contested it and it was speculative that employers would invoke its provisions. 442 U.S. at 305, 99 S.Ct. at 2312
 
 
 [7]
 Although the Supreme Court did not expressly discuss the issue of standing in Dixon, it is required to raise sua sponte the lack of standing as an outgrowth of the "case and controversy" requirement associated with Article III, and has done so on several occasions. See, e. g., Juidice v. Vail, 430 U.S. 327, 331, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1976)
 
 
 [8]
 See also Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (plaintiffs who had twice been convicted of violating New Hampshire statute prohibiting destruction of license plate had standing to challenge the statute in federal court because of the possibility of future prosecution); Nyquist v. Mauclet, 432 U.S. 1, 6 n.7, 97 S.Ct. 2120, 2124 n.7, 53 L.Ed.2d 63 (1977) (mere possibility that a student might require financial aid gave standing to challenge a statute excluding financial aid for aliens). In both Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975), the Court also held that a real threat of prosecution would support standing to challenge the constitutionality of the underlying statute, though it remanded in both cases to the district court to determine whether such a threat really existed. In Steffel the plaintiff had been threatened with prosecution for criminal trespass for handbilling near a shopping center against the Vietnam war and the Court remanded for an evaluation of his continuing interest in leafletting with the de-escalation of the war. Id. at 459-60, 94 S.Ct. at 1215-16. In Ellis the plaintiffs had been threatened with continued prosecution under a Dallas loitering statute and the Court remanded for a determination of whether they even still were present in Dallas or whether the statute was still being enforced. Id. at 434-35, 95 S.Ct. at 1696
 
 
 [9]
 Rule 24(a) Fed.R.Civ.P. states:
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 [10]
 Rule 24(b) states:
 (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 [11]
 We make no ruling on whether the original denial of class certification was proper