**Robert L. GOLDBERG et al.**

v.

**Curtis TARR et al.**

**Civ. A. No. 71–1480.**

United States District Court,
E. D. Pennsylvania.

Feb. 19, 1980.

Donald L. Weinberg, Kohn, Savett, Marion & Graf, P. C., Philadelphia, Pa., for plaintiff.

William Z. Elliott, Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM

CAHN, District Judge.

In this proceeding filed on June 16, 1971, plaintiffs[1] seek a determination that the Military Selective Service Act, 50 U.S.C.

---

1. The named plaintiffs at the time this suit was filed were Andrew Rowland, a minor by his

guardian Lewis Rowland, David Freudberg, a minor by his guardian, Raymond Freudberg, David B. Sitman, a minor by his guardian, Norman Sitman, and Steven S. Rowland, a minor by his guardian, Lewis Rowland. On June 25, 1975, Robert L. Goldberg was permitted to intervene as a party plaintiff, and the title of this case was changed to Robert L. Goldberg, et al., v. Curtis Tarr, et al. On July 22, 1975, on motion of the plaintiffs, Andrew Rowland, David Freudberg, and Steven S. Rowland were dismissed as parties to this action.

App. § 451 *et seq.* (hereinafter the Act), is unconstitutional. The defendants are the National Director of Selective Service, the Acting State Director of Selective Service for Pennsylvania, and Local Board No. 138 in Philadelphia, Pennsylvania. The complaint contains class action allegations,[2] requests the convocation of a three-judge court, and prays for declaratory and injunctive relief. Initially, plaintiffs challenged the Act in five separate counts alleging: the taking of property without due process (Count I); involuntary servitude (Count II); impermissible discrimination between males and females (Count III); invasion of the rights to free expression and peaceful assembly for the petition of grievances (Count IV); and the illegality and unconstitutionality of the Vietnam War (Count V).

On April 27, 1972, the Honorable James H. Gorbey denied the application for a three-judge court and on motion of the defendants dismissed the complaint because plaintiffs' claims either had been authoritatively rejected by appellate courts or presented nonjusticiable political questions.[3] The plaintiffs appealed from the order dismissing their complaint. On May 11, 1973, in a *per curiam* opinion, the Court of Appeals for the Third Circuit held that the Supreme Court had previously determined the issues raised by Counts I, II, and IV adversely to the plaintiffs and that Count V was moot because of the cessation of hostilities in Vietnam.[4] The court then held:

> What remains is Count III, a claim that the Act offends the equal protection clause because it discriminates unconstitutionally between males and females. This contention has not been adjudicated by the Supreme Court, although there is a thoughtful opinion by Chief Judge Marsh of the Western District of Pennsylvania concluding that such 'classifications as age and sex are not arbitrary or unreasonable, and the classifications are justified by the compelling government interest. . . .' *United States v. Dorris*, 319 F.Supp. 1306, 1308 (W.D.Pa.1970). Guided by the stringent language of *Ex parte Poresky*, [290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152], *supra*, which suggests that the 'unsoundness' of the claim must result 'from previous decisions of this [Supreme] court,' we are constrained to hold that this count presents an issue which is not yet foreclosed. From the district court's opinion we are unable to determine on what basis it rejected this particular count. Therefore, we will vacate the judgment of the district court and remand these proceedings solely for the purpose of considering Count III. If the district court is satisfied that plaintiffs have standing and that the constitutional attack is not insubstantial as defined in *Goosby v. Osser*, [409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36] *supra*, it should request the convocation of a statutory court.

*Rowland v. Tarr*, 480 F.2d 545, 547 (3d Cir. 1973).

On remand, in accordance with the mandate of the court of appeals, Judge Gorbey found that the plaintiffs had standing to proceed on Count III and that the sex discrimination issue did not present an insubstantial constitutional question. Judge Gorbey then requested the convocation of a three-judge court.[5] On July 1, 1974, the three-judge court, with Judge Rosenn dissenting, denied defendants' motion to dis-

---

2. Although the complaint contains allegations seeking the establishment of classes of plaintiffs and defendants, the plaintiffs have not filed a motion requesting certification of any class. Plaintiffs did on September 8, 1971, move for an extension of time for determination of whether the case is to be maintained as a class action. To date the court has not ruled on plaintiffs' motion for extension. We will, in the order to be filed, establish a schedule for determining the class action status of this proceeding if the plaintiffs wish to pursue their class action allegations.

3. Judge Gorbey's opinion is reported at *Rowland v. Tarr*, 341 F.Supp. 339 (E.D.Pa.1972).

4. The *per curiam* opinion is reported at *Rowland v. Tarr*, 480 F.2d 545 (3d Cir. 1973).

5. The Chief Judge of the Court of Appeals for the Third Circuit appointed the Honorable Max Rosenn, Circuit Judge, and the Honorable Joseph S. Lord, III, Chief Judge of the Eastern District of Pennsylvania, to join Judge Gorbey on the three-judge panel.

At the time this three-judge court was convened § 2282 of Title 28 of the United States

miss.[6] The court found that this case presented an actual controversy which was not then moot and that it had federal question subject matter jurisdiction founded on 28 U.S.C. § 1331. The court also rejected the defendants' contention that § 10(b)(3) of the Act [50 U.S.C. App. § 460(b)(3)][7] precluded judicial review of the sex discrimination issue.[8]

Following Judge Gorbey's death the within case was transferred on November 11, 1977, to the calendar of Judge Edward N. Cahn. Thereafter no entry appeared on the docket until June 6, 1979, when the Clerk of the District Court issued a notice pursuant to Local Rule of Civil Procedure 23(a).[9] A flurry of activity immediately ensued with the result that several issues are now before the three-judge court for resolution. Essentially, plaintiffs seek additional discovery and a firm trial date while defendants have moved for a protective order and for judgment on the pleadings. We will treat the motion for judgment on the pleadings as a motion for summary judgment.[10]

There are four bases for defendants' summary judgment motion. Defendants contend the matter is moot, the plaintiffs lack standing, the plaintiffs seek an advisory opinion and the issue of a male-only draft is

---

Code provided that an interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress on grounds of unconstitutionality should not be granted unless the application therefor has been heard and determined by a three-judge district court. This statute was repealed by Pub.L. 94–381, §§ 1, 2, 90 Stat. 1119 (August 12, 1976). However Public Law 94–381 does not apply "to any action commenced on or before the date of enactment." Pub.L. 94–381 § 7, 90 Stat. 1119 (August 12, 1976). Therefore, jurisdiction over this case properly remains in this three-judge court.

6. The Majority and Dissenting Opinions of the three-judge court are reported at *Rowland v. Tarr*, 378 F.Supp. 766 (E.D.Pa.1974).

7. Section 460 authorizes the President to establish civilian local boards, civilian appeal boards, and agencies of appeal. Section 460(b)(3) provides in part:

Such local boards, or separate panels thereof each consisting of three or more members, shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards to hear and determine subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title [said sections], of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe.... The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President. The President, upon appeal or upon his own motion, shall have power to determine all claims or questions with respect to inclusion for, or exemption or deferment from training and service under this title [said sections] and the determination of the President shall be final. No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant.

8. The basis for Judge Rosenn's dissent was his belief that § 10(b)(3) interdicted preinduction judicial review because the constitutional challenge may only be made either as a defense in a criminal prosecution for refusing induction or by habeas corpus action after accepting induction.

9. Rule 23(a) provides in part:

Whenever in any civil action the Clerk shall ascertain that no proceeding has been docketed therein for a period of more than one year immediately preceding such ascertainment, the Clerk shall send notice to counsel of record or, if none, to the parties that unless the Court, upon written application filed within thirty (30) days from the receipt of such notice and upon good cause shown shall otherwise order, the action shall be dismissed.

10. Where, as here, matters outside of the pleadings have been presented, Fed.R.Civ. 12(c) provides that a motion for judgment on the pleadings may be treated as a motion for summary judgment.

a nonjusticiable political question. However, we need not consider the political question issue because the court of appeals reversed the district court's dismissal of Count III even though the defendants had raised that specific contention. Not only does that ruling remain the law of this case but,

> This [three-judge] court's jurisdiction is that of a District Court and it is bound to follow unreversed and unmodified decision by the Circuit Court of Appeals of the circuit.

*Sunshine Anthracite Coal Co. v. Adkins*, 31 F.Supp. 125, 127 (E.D.Ark.), *aff'd* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). *See* 1B Moore's Federal Practice ¶ 0.402.

In the three-judge court opinion of July 1, 1974, Judge Gorbey rejected defendants' claim that the controversy was moot and that plaintiffs sought an advisory opinion. Even though the Congress did not extend induction beyond July 1, 1973, except to those who had previously received deferments [*see* 50 U.S.C. App. § 467(c)], the three-judge court found that potential class members remained subject to induction and that the threat of criminal prosecution was real.

Defendants now claim that subsequent to July 1, 1974, President Ford and President Carter by Proclamations and Executive Order have eliminated any present possibility that plaintiffs or potential class members will be subject to registration or induction pursuant to the provisions of the Act.[11] These Presidential directives terminated registration procedures and pardoned nonviolent draft resisters. Defendants ask us to hold that, in light of these directives, the issue of the constitutionality of the Act providing for a male only selective service program is not justiciable at this time.

Before proceeding further we should set forth the precise constitutional argument made by the plaintiffs. According to the plaintiffs their rights to equal protection of the law, as that concept is included in the due process clause of the Fifth Amendment, are violated in that males only are subject to registration for the draft, and therefore there is an increased probability of the male plaintiffs actually being inducted because the pool of draft eligibles is decreased by the exclusion of females.[12] Plaintiffs maintain that a President may change a Proclamation or Executive Order at any time and

---

11. Proclamation No. 4360 issued by President Ford on April 1, 1975, provides in part:

> In order to evaluate an annual registration system, existing procedures are being terminated and will be replaced by new procedures which will provide for periodic registration.
>
> Now, therefore, I, Gerald R. Ford, President of the United States of America, by virtue of the authority vested in me by the Constitution and the statutes of the United States, including the Military Selective Service Act, as amended, do hereby revoke proclamations No. 2799 of July 20, 1948, No. 2937 of August 16, 1951, No. 2938 of August 16, 1951, No. 2942 of August 30, 1951, No. 2972 of April 17, 1952, No. 3314 of September 14, 1959, and No. 4101 of January 13, 1972; thereby terminating the present procedures for registration under the Military Selective Service Act, as amended.

40 Fed.Reg. 14567 (April 1, 1975). The Proclamation, Number 4483, issued January 21, 1977, by President Carter provides in part:

> Acting pursuant to the grant of authority in Article II, Section 2 of the Constitution of the United States, I, Jimmy Carter, President of the United States, do hereby grant a full,

complete, and unconditional pardon to: (1) all persons who may have committed any offense between August 4, 1964, and March 28, 1973, in violation of the Military Selective Service Act or any rule or regulation promulgated thereunder; and (2) all persons heretofore convicted irrespective of the date of conviction, of any offense committed between August 4, 1964, and March 28, 1973, in violation of the Military Selective Service Act, or any rule or regulation promulgated thereunder, restoring them full political, civil and other rights.

42 Fed.Reg. 4391 (Jan. 24, 1977). By Executive Order 11967 on January 21, 1977, President Carter directed the Attorney General to "cause to be dismissed with prejudice to the government all pending indictments for violations of the Military Selective Service Act alleged to have occurred between August 4, 1964, and March 28, 1973." 42 Fed.Reg. 4393 (Jan. 24, 1977).

12. In the following cases the courts have rejected similar arguments by prospective male inductees: *United States v. Reiser*, 532 F.2d 673 (9th Cir.), *cert. denied*, 429 U.S. 838, 97 S.Ct. 108, 50 L.Ed.2d 105 (1976); *United States v.*

therefore they continue to be jeopardized by the Act which at this very moment authorizes the registration of males, but not females, and the induction of males deferred prior to July 1, 1973.[13]

It is advisable for the district court to make a factual inquiry to determine if the plaintiffs or potential class members will suffer any immediate concrete harm or undergo any present apprehension of imminent concrete harm from the alleged unconstitutional Act. In *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), Justice Burger remarked:

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). As refined by subsequent reformulation, this requirement of a 'personal stake' has come to be understood to require not only a 'distinct and palpable injury,' to the plaintiff, *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343, but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct.

See also *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). In *McKay v. Heyison*, 614 F.2d 899 (3d Cir. 1980), Judge Higginbotham recently found that a litigant did have standing to attack the constitutionality of a state statute establishing a license revocation procedure, even though a possibility existed that the litigant's license would not be revoked. Before reaching this conclusion, Judge Higginbotham observed:

> Generalizations about the precise requirements of standing must be made with care, for the law of standing has often been confusing and highly sensitive to the *particular factual context* to which it is applied.

614 F.2d at 903 (emphasis supplied).

In their briefs, counsel have not addressed their arguments to the *Duke Power* and *Babbitt* cases nor have they developed an adequate record of the "particular factual context" of this case. Neither counsel has defined exactly what is required to activate the selective service process. For example, it is important for the court to know if any specific congressional action on appropriations is necessary before registration and/or induction of the plaintiffs or potential class members can take place. The record does not explicitly set forth what burdens, if any, the Act currently places on the plaintiffs nor is their status clear concerning the present application of the Act to them. We believe that a complete factual record, on the subject of how the Act causes the plaintiffs or potential class members immediate concrete harm or

---

Baechler, 509 F.2d 13 (4th Cir. 1974), cert. denied, 421 U.S. 993, 95 S.Ct. 2000, 44 L.Ed.2d 483 (1975); *United States v. Camara*, 451 F.2d 1122 (1st Cir.), cert. denied 405 U.S. 1074, 92 S.Ct. 1513, 31 L.Ed.2d 808 (1971); *United States v. Fallon*, 407 F.2d 621 (7th Cir.), cert. denied 395 U.S. 908, 89 S.Ct. 1749, 23 L.Ed.2d 220 (1969); *United States v. Yingling*, 368 F.Supp. 379 (W.D.Pa.1973); *United States v. Dorris*, 319 F.Supp. 1306 (W.D.Pa.1970); and *United States v. Cook*, 311 F.Supp. 618 (W.D. Pa.1970). Two recent developments may affect the foregoing precedent. First, there appears to be a change in the standard of constitutional review imposed on government action which discriminates on the basis of sex. *See Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Second, plaintiffs' counsel urged at oral argument that there has been a major

change in the actual utilization of women in the armed forces.

**13.** Although Proclamation 4360, see n. 11, *infra*, has terminated the registration process, the Act, which has not been repealed, could possibly enable the President to resume by Executive Order the Selective Service process for registration of all males within certain age categories and to induct plaintiffs into the armed services if deferments had been granted to them prior to July 1, 1973. *See United States v. Dolinger*, 384 F.Supp. 682 (S.D.N.Y.1974); *Jones v. Watkins*, 422 F.Supp. 1268, 1278 (N.D. Ga.1976). In this regard, plaintiff Goldberg alleges in paragraph 4 of his motion to intervene that he received a deferment in 1971.

present apprehension of imminent concrete harm, is indispensable before we can adjudicate the issues of standing, mootness, and ripeness.

An analysis of the limitations inherent in Article III and the prudential concerns [14] which are part of the overlapping doctrines of mootness, ripeness, and standing requires a careful consideration of the present position of the plaintiffs and the circumstances under which the issues before the court might be capable of repetition but evade review.[15] *See Dow Chemical Co. v. E.P.A.*, 605 F.2d 673 (3d Cir. 1979); *Exxon Corp. v. F.T.C.*, 588 F.2d 895 (3d Cir. 1978). At present the record is inadequate for this court to make findings of fact to determine the merits of defendants' summary judgment motion. Therefore we will deny defendants' motion for summary judgment.

14. Among the prudential concerns that could apply to the case at bar are: judicial reluctance to adjudicate constitutional issues; the advisability of avoiding unnecessary confrontation with the Executive and Legislative Branches; and the desirability of leaving remedies for generalized grievances to the political rather than the judicial arena. *See Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221–223, 94 S.Ct. 2925, 2932–2933, 41 L.Ed.2d 706 (1974). We recognize that there is considerable concern in the nation over the possible renewal of selective service registration and induction and this may play a part in our consideration of the mootness of this action. We are also fully aware of recent pronouncements by members of the Executive and Legislative Branches of government. This case may be mooted or made clearly ripe for decision by legislative action in the near future. Until such action occurs it is our duty to adjudicate the matter before us if it is justiciable.

15. An example of a lucid analysis of the constitutional and prudential strands of the mootness doctrine is Judge Luongo's recent opinion in *National Hydro Systems, Inc. v. Schramm*, 482 F.Supp. 693 (E.D.Pa.1979).